UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

HILARY BEST,                    *    Case No. 12-CV-6142 (NGG)
                                *
            Plaintiff,          *    Brooklyn, New York
                                *    September 6, 2013
                                *
      v.                        *
                                *
JENNIFER SCHECTER, et al.,      *
                                *
            Defendants.         *
                                *
* * * * * * * * * * * * * * * *

            TRANSCRIPT OF CIVIL CAUSE FOR HEARING
            BEFORE THE HONORABLE MARILYN D. GO
               UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff, Pro Se:    HILARY BEST
                              Post Office Box 751072
                              Forest Hills, NY  11375


For the State Defendants:     JOSE LUIS VELEZ, ESQ.
                              N.Y. State Attorney General,
                                Litigation Bureau
                              120 Broadway, 24th Floor
                              New York, NY  10271


For the City Defendants:      DAVID ALAN ROSINUS, JR., ESQ.
                              New York City Law Department
                              100 Church Street
                              New York, NY  10007




Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

1          (Proceedings commenced at 11:56 a.m.)

2          THE CLERK:  Civil cause for a motion hearing,

3    docket 12-CV-6142, *Best versus Schecter*.  Counsel and *pro se*

4    plaintiff, please state your appearances.

5          MR. BEST:  Yes.  Hilary Best, plaintiff.

6          MR. VELEZ:  Jose Velez for the New York State

7    Attorney General's Office on behalf of the State defendants.

8    Good morning, Your Honor.

9          MR. ROSINUS:  Good morning.  David Alan Rosinus,

10   Jr. from the New York City Law Department representing the

11   City defendants.

12         THE COURT:  Good morning, everybody.  Let me just

13   remind you, Mr. Best, that we had this conference scheduled

14   for 11:30 and it would be greatly appreciated if you come on

15   time.

16         MR. BEST:  Yes, Judge.

17         THE COURT:  I sometimes sanction attorneys for

18   being late --

19         MR. BEST:  Yes, Your Honor.

20         THE COURT:  -- because it causes -- it

21   inconveniences everybody and as a result, I will be behind in

22   my calendar because I have some people sitting in the back of

23   the courtroom who expect to start at 12:00 and we will not be

24   able to proceed.

25         Let me just go over some more minor matters and

1       then we can talk about the claims in this case and what's --

2       and some of the questions that I have about this case.

3               There was a motion filed by Mr. Best for the

4       transcripts of the State trial and --

5               MR. BEST:  Yes, Judge.

6               THE COURT:  -- as Mr. Velez mentioned in his

7       response, there are no transcripts prepared.  Is that

8       correct?

9               MR. BEST:  That's correct, Your Honor.

10              THE COURT:  Ordinarily in a civil case, the Court

11      will not direct a party to produce transcripts that don't

12      exist and certainly if there are any particular portions of

13      the transcript you think are worthwhile, then I'll ask Mr.

14      Velez to assist you in arranging for a transcription to be

15      made, but the cost would have to be borne by you.

16              If the parties feel that there are portions of the

17      transcript that are useful, then perhaps you can work out

18      some means of sharing the cost.

19              MR. BEST:  Well, Your Honor, first of all, I'd just

20      like to raise an objection to the amount that the Attorney

21      General indicated it would cost to produce the transcripts.

22              That was a flagrant exaggeration of the amount and

23      I would like to state that he in fact did produce transcripts

24      that he submitted of the hearings that were held, and if he

25      felt that the transcripts were in his benefit, he would have

1    produced them.  Because he knows that they're not in his

2    benefit is why he's withholding them and I do not have the

3    financial means to produce the transcripts.

4           I've been granted a *former pauperis* status in this

5    matter, so of course I'd be considered the testimony of the

6    trial is essential because it reveals that the defendants

7    acted without lawful authority.

8           It reveals that knowing that they didn't have the

9    lawful authority, proceeded to do so anyway as a form that's

10   depriving me my liberty without due process of law.

11          So since she did produce the transcripts -- both

12   hearing transcripts on the preceding hearings -- had no

13   problem with that and the transcripts that I'm seeking are

14   not any more volumous [sic] than the ones that he already

15   produced.  I request that the Court reconsider that.

16          MR. VELEZ:  Your Honor, may I respond?

17          THE COURT:  Certainly.

18          MR. VELEZ:  That is sorely incorrect what Mr. Best

19   has stated.  The transcripts he's referring to is Mr. Best

20   had two hearings in State court regarding his detention, both

21   of which the judge determined that he suffered from a mental

22   illness, that if released at that time he would be a danger

23   to himself and/or others and ordered him further detained in

24   the hospital.  They were short hearings.

25          They were conducted within a matter of 15, 20

1    minutes and those transcripts were obtained because Mr. Best

2    requested a hearing and review which he is entitled to or a

3    jury.

4              Now the jury review and hearing that he's referring

5    to lasted over nine days, Your Honor.

6              THE COURT:  Okay.  Now let me just ask you one

7    question.  Were those transcripts prepared of --

8              MR. VELEZ:  That's a normal course --

9              THE COURT:  -- after -- as part of your motion?

10   Did you order them to be prepared or were they already

11   prepared as a matter of course?

12             MR. VELEZ:  They were already prepared.

13             THE COURT:  Okay.

14             MR. VELEZ:  They were obtained when Mr. Best

15   requested a re-hearing and --

16             THE COURT:  Oh.  Okay.

17             MR. BEST:  Your Honor, just for clarification,

18   under the law, it does -- a re-hearing does not involve any

19   other prior proceedings, (inaudible).  So any transcripts

20   that pertain to the proceeding had nothing to do any

21   contingency.  Second of all --

22             THE COURT:  No, no.  Well, Mr. Best --

23             MR. BEST:  He ordered those transcripts himself as

24   a way of trying to have evidence to proceed with the second

25   hearing.

1          THE COURT:  I'm going to accept Mr. Velez's

2    statement that those transcripts were prepared before -- long

3    before he made his motion to dismiss.  Is that correct?

4          MR. VELEZ:  That's correct.  And the law provided

5    to Mr. Best long before that motion was made.

6          THE COURT:  I -- I'm going to stand by my original

7    determination.  I agree that -- or in a civil case, litigants

8    are not generally required to incur costs -- the cost of

9    producing transcripts which have not yet been prepared in

10   another proceeding.

11          As a matter of fact, I think that the evidence in

12   the state trial can be separately acquired and we can re-

13   visit this issue at some future date.  But I'm denying that

14   motion at this time for the reasons stated by Mr. Velez.  But

15   there may be circumstances that may cause me to reconsider.

16          MR. BEST:  Just one last comment, Your Honor.  In

17   regard to him stating that a judge found me to be

18   incompetent, under New York law, a judge cannot --

19          THE COURT:  Now Mr. Best --

20          MR. BEST:  -- (inaudible) --

21          THE COURT:  -- Mr. Best --

22          MR. BEST:  -- I'm just clarifying, Your Honor.  A

23   judge in New York state cannot -- cannot make such a

24   decision.  Only thing they can do is make a decision of

25   whether or not to allow a hospital to continue retaining a

1    person.

2              THE COURT:  I've read the order.  The one order I

3    don't have is the September 7th order.  Is that included

4    anyplace in the documents?

5              MR. BEST:  The transcript?

6              THE COURT:  No, no.  The order where I guess he was

7    found incompetent to stand trial.

8              MR. BEST:  That's it -- yeah [sic].  There were --

9    yes.

10             THE COURT:  Is there a transcript, too?  Is that --

11             MR. BEST:  No, that -- there was a [sic] order that

12   was issued in that matter.

13             THE COURT:  Well, was -- was there an order --

14             MR. BEST:  That was done by the criminal -- yes.

15             THE COURT:  Yes.  No.  I expect -- both sides refer

16   to that order.  I did not encounter a copy of that order --

17             MR. BEST:  Correct.  And I would like --

18             THE COURT:  (Inaudible.)

19             MR. BEST:  -- to have the defendants produce that,

20   please.

21             MR. VELEZ:  Your Honor, the way that works is Mr.

22   Best was arrested for criminal charges --

23             THE COURT:  Yes.

24             MR. VELEZ:  -- while he was in the criminal justice

25   system.  It was determined that he was --

1          MR. BEST:  No.  Objection, Your Honor.  He's not

2     answering --

3          MR. VELEZ:  (Inaudible.)

4          THE COURT:  Now stop.

5          MR. BEST:  -- your question.

6          THE COURT:  Mr. Best.

7          MR. BEST:  I'm sorry, Your Honor.

8          THE COURT:  Mr. Best.  Does anybody have a copy of

9     that order?

10         MR. VELEZ:  At this -- no, I don't, Your Honor.

11         THE COURT:  Mr. --

12         MR. VELEZ:  It was prepared (inaudible).  But what

13    did happen was that the criminal court judge referred Mr.

14    Best to the Office of Mental Health for observation and for

15    retention --

16         THE COURT:  No.  Okay.  I think it would be useful

17    to get a copy of that order.  It's a matter of public record.

18    I'll --

19         MR. BEST:  Yes, Your Honor.  That order --

20         THE COURT:  Mr. Best?

21         MR. BEST:  I'm sorry, Your Honor.

22         THE COURT:  I'll read the order when we get it.

23         MR. BEST:  Thanks.

24         THE COURT:  I don't have a copy and I'd like to see

25    it.

1          MR. BEST:  Yes.

2          THE COURT:  Because obviously, it does set forth

3     matters that may be relevant to this case and I -- do you

4     have a copy of the order, Mr. Rosinus?

5          MR. ROSINUS:  I don't, Your Honor.

6          THE COURT:  Okay.

7          MR. BEST:  It's two orders, Your Honor.  The order

8     of September 7th and the order that -- which is not the same

9     order that was used to transfer me from Rikers Island to

10    Creedmoor.  So we need to also see that order.

11         THE COURT:  Well, I agree.  Whatever order there

12    may be.

13         MR. VELEZ:  That was 2012, September 7th.

14         MR. BEST:  Yes.  No.  No.  2000 -- yes.  2012.  So

15    it was a order [sic] for observation and then there was a

16    [sic] order for allegedly for a commitment transferring me to

17    Rikers Island to Creedmoor which I have not seen as well.

18         THE COURT:  Now there is a motion to amend and I --

19    and I'm prepared to treat -- grant the request for a pre-

20    motion conference.

21         That we're having this conference now and we need

22    to address the substance of the motions.  I don't think

23    further submissions are necessary because of what's been

24    submitted in connection with the motion to dismiss, but I'll

25    give the defendants an opportunity, if they wish, to make

1    additional -- make additional statements with respect to the

2    motion to amend.

3         MR. VELEZ:  Your Honor, I'll go first.  I believe

4    what Mr. Best is requesting in that motion to amend has

5    already been denied by Judge Garaufis.  It's basically the

6    same request to have two defendants who were previously --

7         THE COURT:  No.  You put that in your paper

8    already.

9         MR. VELEZ:  Your Honor, I would just rely on the

10   grounds of the basis provided by Judge Garaufis when he

11   dismissed those two defendants from the lawsuit.

12        THE COURT:  My question was do people want to have

13   an opportunity -- the defendants want an additional

14   opportunity to respond because we will -- there have been

15   indirect responses in the course of your papers.

16        MR. VELEZ:  I don't have anything further to add at

17   this point, Your Honor.

18        THE COURT:  Okay.

19        MR. ROSINUS:  I think I'm fine, Your Honor.

20        THE COURT:  So I'll deem the motion for a pre-

21   motion conference granted and we'll convert that motion that

22   was filed to a motion to amend and decide on the papers

23   submitted.  Now --

24        MR. BEST:  That amendment seeks to also include

25   defendants not previously named.  Right?

1          THE COURT:  Yes.  You wanted to substitute the

2    Commissioner.

3          MR. BEST:  Yes.

4          THE COURT:  And when you -- all right.

5          MR. BEST:  I had an attorney.  Mr. Goldstein, I

6    believe.

7          THE COURT:  Yes.

8          MR. BEST:  Okay, Judge.

9          THE COURT:  But I think Judge Garaufis had

10   previously addressed the issue of people involved in the

11   process of the criminal case originally.

12         MR. BEST:  Well, you see, he did that on a basis of

13   a misunderstanding of facts, Your Honor.  He did that on a

14   basis of thinking that the judge was in fact acting within

15   the law when she did what she did.

16         THE COURT:  You might not like the decision and

17   perhaps it's easy for me to take comfort in the fact that

18   courts have been very vigorous in upholding judicial

19   immunity, but in any event --

20         MR. BEST:  But I did say --

21         THE COURT:  -- I will --

22         MR. BEST:  -- I'm sorry.  This --

23         THE COURT:  -- I will read your motion papers.

24         MR. BEST:  I did cite on case where the judge did

25   not have the authority to hold somebody without bail.  Okay?

1    Like in my case, the judge --

2              THE COURT:  Well, judges get reversed for different

3    reasons, but --

4              MR. BEST:  No.  I'm saying she was not liable under

5    1983.

6              THE COURT:  I'll read that case again more

7    carefully, Mr. Best.  I'm prepared -- and --

8              MR. BEST:  But she was imposing bail when the law

9    did not permit her to impose bail.  In my case, she withheld

10   bail when the law mandated there was supposed to be bail.

11   The law mandated that I receive bail because I only had a

12   misdemeanor charge.

13             The judge had no discretions to deny me bail and

14   when she referred me for the psychiatric examination, being

15   that there was no request for me to being detained as a

16   resulted of that for that examination, the judge act [sic]

17   totally outside of the law without any lawful discretion in

18   that matter.

19             THE COURT:  I will -- I'll re-read that case with

20   your comments in mind.  Now I have a couple of questions that

21   are not made clear in the submissions and the chronology of

22   events.

23             After the order was issued on September 7th of last

24   year, where was Mr. Best held before he was ultimately

25   transferred to Creedmoor?

1          MR. BEST:  That was -- anyone can answer?

2          THE COURT:  Yes.

3          MR. BEST:  Rikers Island, Your Honor.

4          THE COURT:  You were at Rikers?

5          MR. BEST:  Yes.  For almost 90 days.

6          THE COURT:  Almost 90 days.  I --

7          MR. BEST:  Which would have been the length of a

8     lawful order for observation that would have been issued on

9     September 7th.  So I didn't -- I wasn't taken -- I wasn't

10    moved to 'cause -- it stated the order as with -- I would've

11    been taken to Bellevue which is a City hospital.  All right?

12    And that's where I was supposed to have been taken -- would

13    have been taken -- unlawfully for observation.  After that

14    point --

15         THE COURT:  Okay.

16         MR. BEST:  -- in time --

17         THE COURT:  Okay.  That's why I'd like to see the

18    order.  The gap in time between his ultimate transfer to

19    Creedmoor and the dismissal of the criminal proceedings is a

20    little troubling, and I -- I'm -- I was just wondering what

21    the standard policy is and why nothing was done earlier than

22    December 4th.

23         MR. BEST:  I can add that to the record.  I'm not

24    afraid to reveal these facts.  What happened was that, Your

25    Honor, that I still had a pending case in the Bronx in which

1      the judge imposed a dollar bail.  I didn't pay the bail and

2      because I didn't pay the bail --

3              THE COURT:  Oh.  You were held on a --

4              MR. BEST:  -- I was sent to Rikers Island --

5      regarding those observation orders.  However, the observation

6      orders were not lawfully issued and the judge in the Bronx

7      became aware of that.  Okay?  Whereupon I explained to her --

8      she knew that the -- because she had investigated -- she had

9      obtained the transcripts --

10             THE COURT:  Who's she?  Who's she?

11             MR. BEST:  It was Judge Best, Your Honor, no

12     relation to the plaintiff.

13             THE COURT:  And this is the judge in --

14             MR. BEST:  In the Bronx.

15             THE COURT:  -- the Bronx?

16             MR. BEST:  Right.  So what she did was -- was, Your

17     Honor, December -- I think it was November 26th when I had

18     the court appearance.  She ordered even though the order for

19     observation was still in existence, she ordered me released

20     on my own recognance [sic].  She said, well, I don't care

21     about those orders.  I don't believe those orders -- that

22     those observation orders are valid, so I'm ordering you

23     released on his own recognance [sic].

24             THE COURT:  When was that?

25             MR. BEST:  That was on about November 26th, 2011.

1    What happened was, was that -- was it November 2011?  No.

2    2012.  12.  2012.  Yes.  So what happened was, is that

3    because I was dressed in orange and had shackles, the

4    officers -- the court officers took me back downstairs, ended

5    up in with DOC.  They hadn't been thinking I was -- no --

6    when they took me back downstairs, I had clothes underneath

7    this jumpsuit, just take it off and I'd be released from the

8    courtroom.

9         They left me with DOC and instead of DOC releasing

10   me, even though she told them when she checked the hall, she

11   said, those down the halls, I'm ordering him released.  DOC

12   took me back to Rikers Island and then held me.

13        And then they manufactured a [sic] order a few days

14   later, like the next week, just before the -- the day before

15   the 90-day orders was [sic] to expire and used those

16   manufactured orders to take me to Creedmoor Psychiatric

17   Center.

18        I looked at the order and I said, this is not my

19   information.  It only has my main one here.  Everything else

20   is incorrect.  This is not a lawful order and they said,

21   well, if I don't go, they're going to force me so I went

22   under duress.

23        MR. VELEZ:  Your Honor, everything that Mr. Best

24   has stated happened prior to any involvement of the state

25   defendants law presently in the lawsuit.

1          Mr. Best was remanded to the Office of Mental

2     Health either on December 4th or December 5th for observation

3     and also for examination to determine whether he should be

4     involuntarily committed to the hospital.

5          THE COURT:  Okay.  Now you say he was remanded on

6     December 4th.

7          MR. BEST:  No.  September 7th, I was originally

8     remanded.

9          THE COURT:  Yes.  No.  I'm just wondering why there

10    is this gap in time.  And I'm trying to --

11         MR. VELEZ:  I'm trying to explain that there were

12    other --

13         THE COURT:  Other charges?

14         MR. VELEZ:  -- other matters --

15         THE COURT:  Okay.

16         MR. VELEZ:  But my point, Your Honor, is he was not

17    actually physically transferred to the custody of Office of

18    Mental Health until December 4th or December 5th.

19         THE COURT:  And so -- and that's reflected in the

20    application for admission that was filed?  I guess, dated

21    December 5th?

22         MR. BEST:  5th.  Right.

23         THE COURT:  Okay.

24         MR. BEST:  Right.

25         THE COURT:  All right.

1          MR. BEST:  But there was no lawful order for that

2     transfer on December the 4th from Rikers Island to Creedmoor

3     and that's why we need that order.  We need the order that

4     transferred me from -- 'cause [sic] again, the original

5     90-day order which not -- which also was not lawfully issued,

6     which I'm bringing to the Court's attention, was only for a

7     90-day detention in the City hospital.

8          And the City was supposed to be turned and make

9     that application for that they felt a person needed to be

10     continued retained and then for a transfer to Creedmoor and

11     then be evaluated by the Bellevue Hospital psychiatric.

12          And under the law, only certain places can even do

13     such evaluations.  Bellevue is one of them.  So they were

14     supposed to do the evaluation and then make the application

15     and then submit it to Creedmoor for independent evaluation.

16     That didn't happen.

17          I was taken to Creedmoor and at Creedmoor, they did

18     the whole process, did everything in and of themselves --

19     judge, jury and executioner and that was in violation of the

20     law.  So there was never any lawful admission to Creedmoor

21     Psychiatric Center.

22          MR. VELEZ:  That's not correct, Your Honor.

23          MR. BEST:  So acting --

24          MR. VELEZ:  That's not correct.

25          MR. BEST:  -- after the fact, they did --

1        THE COURT:  I --

2        THE COURT:  -- it without lawful authority.

3        THE COURT:  -- well, I -- it's -- I don't

4   ordinarily on a motion to dismiss start, you know, mining for

5   facts not in the papers submitted.  But this gap is quite

6   glaring and one or both of the sets of defendants can just

7   fill in the blanks and describe what happened and produce the

8   orders regarding that ultimately led to his transfer to

9   Creedmoor, I would greatly appreciate it.

10       MR. VELEZ: Your Honor, I just want to say that

11  obviously the State defendants cannot do that because Mr.

12  Best did not come into the custody of the State (inaudible)

13  Office of Mental Health until December 4th, December 5th.

14  Everything that Mr. Best has discussed happened prior to that

15  -- happened in Rikers, happened when he was in the

16  jurisdiction of other entities and not the New York State

17  Office of Mental Health.

18       MR. ROSINUS:  (Inaudible.)

19       THE COURT:  (Inaudible.)

20       MR. ROSINUS:  I mean, as the complaint right now is

21  before the Court, Mr. Best has only sued two individuals.

22  They are the two psychiatrists from Bellevue who recommended

23  to the Court -- who informed the Court that in their

24  judgement he was unfit to stand trial and he's saying that

25  they didn't -- they did so unlawfully.  But -- and of course

1    we've, in our motion to dismiss, have argued that they have

2    absolute judicial immunity.

3           There's no allegation against the DOC.  There's no

4    allegation relating to any time frame during which he was

5    held in any City facility.  The only really allegation

6    against the City -- well, that I'm aware of, is --

7           THE COURT:  There was no clear allegation, but

8    there was an allegation that he was held too long.

9           MR. ROSINUS:  Well, I don't know what defendant

10   that would be pled -- what defendant that would be pled

11   against, Your Honor.

12          MR. BEST:  From June -- from July -- from July --

13   what was the date?  July 17.  From July 17th on, was when the

14   illegality commenced.  Okay?  That's when the judge remanded

15   me without lawful authority and held me detained and

16   subjecting me to the fraudulent psychiatric evaluations.

17   Okay?  It was done in a facility that was not supposed to be

18   done at.  It was done at the courthouse facility when it was

19   supposed to be done at Rikers Island so this judge took

20   control of the outcome.  She knew what she wanted and set

21   this whole thing up, Your Honor.

22          So from July 17th on and that's why I was in DOC

23   custody -- when the illegality started.  So what the judge is

24   saying she wants to see the original order transport for

25   evaluation and then once that's done, there's supposed to be

1    another order --

2              THE COURT:  I --

3              MR. BEST:  -- or documents that authorize the

4    transfer from Rikers Island to Creedmoor.

5              THE COURT:  I would like a copy of orders in the

6    State case and you can fight it between yourselves as to who

7    will submit that, and also --

8              MR. BEST:  I don't have it, Your Honor.  I didn't

9    see --

10             THE COURT:  Mr. Best?

11             MR. BEST:  I'm sorry, Your Honor.

12             THE COURT:  I'm looking at the defendants.

13             MR. BEST:  All right.

14             THE COURT:  And also, I know from some of my other

15   cases, there is some sort of DOCs document regarding the

16   transport of prisoners.  If -- just so we have a better sense

17   of the events that led ultimately to Mr. Best's transfer to

18   Creedmoor.

19             MR. VELEZ:  Your Honor, I just want to state that

20   Creedmoor is chronic care hospital.  It does not accept

21   patients off of the street.  Every patient that is

22   transferred to Creedmoor is pursuant to a transfer from

23   another hospital or in this case pursuant to a court order

24   from the criminal justice system.

25             THE COURT:  I have no order in front of me.  I

think it would be very useful for everybody concerned to have
more information regarding the circumstances that led to Mr.
Best's transfer to Creedmoor.

And I'm only asking for documents that are a matter
of public record and also if it is possible to get some sort
of document regarding his movement -- the prisoner movement
within the system from the time the State Court Judge made
the determination that he should be evaluated.

Perhaps what would be useful is getting the docket
sheets or both the case -- you know, the underlying criminal
case that resulted -- I guess, that's Judge Schecter and then
the case in the Bronx. Maybe that'll -- just the docket
sheet or the entries. That might assist everybody in
understanding what happened.

MR. BEST: And Your Honor, just to note for the
record, what makes this case or what happened to me all the
more heinous is that the entire site evaluation proceedings
in the criminal court were done in my absence without any
basis or reason for doing so. The law is clear that a
defendant must be present for these proceedings. Everything
was done from A to Z in my absence without me having any
knowledge what was going on.

THE COURT: Mr. Best, I have some preliminary
procedural issues to address.

MR. BEST: Yes, ma'am.

1          THE COURT:  And it's -- these are just questions

2     that really are nagging, gnawing at me in the background and

3     I find it -- I'm comfortable issuing any sort of decision --

4     report and recommendation without clarifying these basic

5     facts which you don't clearly allege in your complaint and

6     which are not revealed in any of the submissions that have

7     been made.

8          MR. BEST:  Which is, Your Honor?

9          THE COURT:  What happened in the State Court

10     proceedings?

11          MR. BEST:  I think I, in my amended -- are we

12     talking about the same amended -- because I think I have a --

13          THE COURT:  (Inaudible.)

14          MR. BEST:  -- most recent amendment in which --

15          THE COURT:  (Inaudible.)  I -- the motion to

16     dismiss is with respect to your prior complaints, but I'll

17     look at this -- I'll take you up on that.  But in any event,

18     I think a clear overview that can -- that might be reflected

19     in a state docket sheet or whatever might be useful.  Okay.

20          Now I'd also like to clarify what the claims are

21     and I -- I can appreciate the fact that you're very

22     articulate, Mr. Best, but you're not a lawyer and I just want

23     to make sure I understand what the claims are.  Are you

24     making a claim that you were involuntarily administered

25     medication?

1      MR. BEST:  Attempted to be administered medication.

2      THE COURT:  But you were not -- it was not --

3      MR. BEST:  Correct.

4      THE COURT:  -- administered?  Okay.  Okay.  And

5  then I have a question of Mr. Velez.  After the jury trial,

6  what is the verdict, really?  What is the basis for your

7  *Rooker-Feldman* argument?

8      MR. VELEZ:  Well, I -- I didn't catch the last

9  part, Your Honor.

10     THE COURT: What is the basis for your argument

11 under *Rooker-Feldman*?

12 _____MR. VELEZ:  Well, Your Honor, the orders that Mr.

13 Best is [sic] challenging that had him involuntarily detained

14 in the hospital occurred prior to him commencing the lawsuit

15 with the Court.  Is Your Honor saying now that he's no longer

16 in State custody that *Rooker-Feldman* is no longer applicable?

17     THE COURT:  Well, you have to -- *Rooker-Feldman*

18 generally applies when someone is trying to re-litigate an

19 issue unfavorably decided against him.  And --

20     MR. VELEZ:  But that's what he's still trying to

21 do, Your Honor.  He's saying that these court orders that

22 were made by the State Supreme Court justices were incorrect

23 and that he shouldn't have been involuntarily detained at

24 Creedmoor.  Creedmoor maintained them pursuant to those court

25 orders, so he's now asked -- looking to litigate the validity

1    of those orders that were issued by the State Supreme Court

2    judges.

3            THE COURT:  So I should ignore the jury verdict in

4    analyzing your argument?

5            MR. VELEZ:  It's two separate things.  In New York

6    State Mental Hygiene Law when someone is involuntarily

7    retained in a hospital or they're released under AOT, they

8    have a right to request a re-hearing and review in front of

9    another judge so the *de novo* hearing would be in front of

10   another judge, or in front of a jury.

11           So it's basically -- it was a *de novo* hearing, a

12   new hearing in which a civil jury decided that he did not

13   suffer from a mental illness and once they decided that they

14   decided that, that he didn't really presently suffer from a

15   mental illness, at that time, that was in March of this year

16   -- at that point, then the patient, Mr. Best, should have

17   been released and that's what happened.

18           But that's separate from the findings.  These were

19   not appeals that reversed the decisions of the judges that

20   found him in need of further care and treatment in the

21   hospital --

22           THE COURT:  Okay.

23           MR. VELEZ:  -- and required that he be

24   involuntarily retained at Creedmoor.

25           THE COURT:  I've never seen *Rooker-Feldman* applied

1    that way, so if you want to supplement your argument on that,

2    I'll welcome it.

3              MR. BEST:  Well, Your Honor, may I just bring it to

4    the Court's attention, please, that at the time of my

5    transfer to -- from Rikers Island to Creedmoor, it is my

6    contention that there was no lawful authority for doing so.

7    There was no lawful order in existence authorizing it and

8    then when I got to Creedmoor, defendants acted on their own

9    without lawful authority.  Second of all --

10             THE COURT:  I --

11             MR. BEST:  -- I'd like to say that at the time I

12   started my federal lawsuit, there was no court proceeding

13   pending.  All right?

14             I read federal law of federal cases' decisions that

15   have said that if the federal court has jurisdiction to act

16   and the state court has jurisdiction to act and the lawsuit

17   is placed with the federal court first, the federal court has

18   jurisdiction over that matter until it's entirely exhausted.

19             THE COURT:  Okay.  Anyway, I'll -- I'll consider

20   that argument when issuing my report and recommendation.  Now

21   speaking about no action in the state court, I mean, there

22   was a lot of action subsequent to your filing of -- I mean,

23   there were a lot of proceedings and actions taken after you

24   commenced this action, Mr. Best.  Now you asserted a claim

25   against Defendant Hogan, a Michael Hogan --

1          MR. BEST:  Yes.

2          THE COURT:  -- which --

3          MR. BEST:  He was --

4          THE COURT:  -- it was done -- wait, wait.  Let me

5    finish.

6          MR. BEST:  Yes, ma'am.

7          THE COURT:  I haven't asked the question yet.

8          MR. BEST:  I'm sorry, Judge.

9          THE COURT:  And let me tell you, we are just

10   talking about the motion to dismiss.  This is not the trial.

11   Nobody's making a determination of the merits of the case.

12   Your claim against Defendant Hogan is cast solely in terms of

13   a request for injunctive relief --

14         MR. BEST:  Yes.

15         THE COURT:  -- that you be released.  Now since

16   you've been released, do you have any claim left against

17   Mr. Hogan?

18         MR. BEST:  No, I do not, Your Honor.

19         THE COURT:  Okay.  So would you agree to dismiss

20   the claim against him?

21         MR. BEST:  Uhm [sic] --

22         THE COURT:  And this -- and this is without

23   prejudice.

24         MR. BEST:  -- well, I --

25         THE COURT:  This is without prejudice.

1          MR. BEST:  Yes.  Yes.  Well, let me just say this.

2    As the Commissioner, maybe I should seek to amend my

3    complaint because if he knew that psychiatrists were making

4    these arbitrary and illegal retentions [sic] in violation of

5    mental health law and did nothing to stop it, then that would

6    make him culpable.  Okay?  So I would seek to actually amend

7    my complaint --

8          THE COURT:  No.  No.  Actually, he can be culpable

9    only if he knows about your case.  And --

10          MR. BEST:  About my case?  And not in general --

11          THE COURT:  -- and your trial.

12          MR. BEST:  -- that his conduct -- this kind of

13    conduct is being --

14          THE COURT:  Well --

15          MR. BEST:  -- conducted generally --

16          THE COURT:  -- anyway.  If it's --

17          MR. BEST:  -- and therefore it's --

18          THE COURT:  -- look.  You can go and research the

19    law, but why don't we just -- to focus --

20          MR. BEST:  All right, Your Honor.

21          THE COURT:  -- on the real issues in this case --

22          MR. BEST:  All right, Judge.

23          THE COURT:  -- I'll note that you consent to

24    dismiss --

25          MR. BEST:  And he's no longer the commissioner --

1    THE COURT:  -- (inaudible) and it'll be without --

2    MR. BEST:  -- of mental health, so --

3    THE COURT:  -- prejudice. Okay?

4    MR. BEST:  Yes.  Okay, Your Honor.

5    THE COURT:  As Commissioner.

6    MR. BEST:  All right, Your Honor.

7    THE COURT:  Because then all you're asking for is

8    injunctive relief again.

9    MR. BEST:  Yes, Judge.

10    THE COURT:  Okay.

11    MR. BEST:  That's what I thinking originally.

12    THE COURT:  Okay.  And you talk about equal

13    protection.  Are you claiming you were treated differently?

14    MR. BEST:  Yes, Your Honor.  The law mandated that

15    certain things happen in this proceeding that did not happen.

16    THE COURT:  And that -- no, no.  Well, that's a

17    different matter than -- are you claiming that because of

18    your status that you were treated differently?  Or that they

19    just didn't follow the law?

20    MR. BEST:  No.  I believe that I was singled out

21    now --

22    THE COURT:  But you don't tell me why you think you

23    were singled out.  At least -- or you don't say in your

24    complaint why you were singled out.

25    MR. BEST:  Okay.  Yes, I didn't say in my

1    complaint.  I could amend that argument.  I mean, there's

2    certain things that I could elude to.  I mean, I can't

3    necessarily prove it beyond a reasonable doubt.

4         But I know that -- and maybe this may be something

5    that's occurring generally that the Court needs to be made

6    aware of, you know?  And maybe it just wasn't me.  Maybe it

7    was just me being a minority or a person who's in a lower

8    income class and therefore didn't have the --

9         THE COURT:  Okay.  I think you're sort of grasping

10   right now, but I wanted to give you an opportunity to respond

11   to my concern about what you've put in your complaint.  In

12   any event, you know, the main issue is your detention and so

13   the equal protection is just one sort of legal theory in

14   which you're seeking damages.  Okay.  But I'll -- I don't

15   want -- there's a case going --

16        MR. BEST:  Yes.

17        THE COURT:  -- just let me finish my sentence.  I

18   don't want this case to linger forever as you come up with

19   different theories.  Really, you know, people should look at

20   a case and come up with all the theories and the Court will

21   look at your claims and because you're *pro se*, construe them

22   liberally.  So --

23        MR. BEST:  That could have been also that I was

24   discriminated because I was *pro se* at the time.  Had I

25   tried --

1          THE COURT:  That -- that's too much.

2          MR. BEST:  That's too much?  All right, Judge.

3          THE COURT:  Okay?  All right.  So I --

4          MR. BEST:  (Inaudible.)  Under deposition, maybe we

5     can find out the reason why because we know that something

6     happened that didn't happen.  Maybe they can explain

7     themselves why --

8          THE COURT:  Well, you --

9          MR. BEST:  -- they did what they did.

10         THE COURT:  -- you have to have some reasonable

11    basis for making factual allegations in your complaint.  The

12    filing of a complaint is not a vehicle to question everybody

13    under the sun about everything you want to know about

14    everything that happened to you.  And so you know, we'll deal

15    with your claims and the issues.

16         I have expressed an interest in getting more

17    information from the defendants concerning the underlying

18    criminal cases and we're now talking about two, and also the

19    orders that led to your transfer and any information

20    regarding your movement.  So how quickly can that information

21    be submitted to the Court?

22         MR. VELEZ:  Your Honor, I'm going to go back to my

23    office.  In particular, regarding the transfer order from the

24    criminal court transferring a patient to the custody of

25    OMH -- Office of Mental Health -- so they can -- for

1    observation and to determine whether he needed to be

2    involuntarily retained in the hospital.  That -- I'm going to

3    speak to my legal assistant and we're going to try to obtain

4    that as quickly --

5              THE COURT:  All right.

6              MR. VELEZ:  -- as possible and we'll make an

7    immediate request to obtain that information.

8              THE COURT:  Okay.  Well, why don't you coordinate

9    with Mr. Rosinus and I'll give you three weeks.  Would that

10   be enough time?

11             MR. VELEZ:  Yes, Your Honor.

12             THE COURT:  Okay.

13             MR. BEST:  Again, can we just state for the record,

14   there's two orders that we're after.  The original order --

15   September 7th --

16             THE COURT:  I -- I want all the state court orders.

17   They know that.

18             MR. BEST:  Okay.

19             THE COURT:  I've already said this.

20             MR. BEST:  Thank you, Judge.

21             THE COURT:  Okay.  So you'll provide it by the 27th

22   of September and coordinate with Mr. Rosinus so you don't

23   engage in duplicative work.  Okay.

24             MR. VELEZ:  Your Honor, I just want to say I was

25   looking at my brief regarding the *Rooker-Feldman*.  I don't

1    have anything to add to what's already there, so --

2            THE COURT:  Okay.

3            MR. VELEZ:  -- I consider that fully briefed on

4    that.

5            THE COURT:  All right.  So we don't need any more

6    submissions, but we would like additional information

7    regarding his transfer.  If after review of these documents

8    there are some pointed arguments you want to make as to what

9    those documents show with respect to the arguments raised in

10   the motion to dismiss, then I'll give both sides an

11   opportunity to provide further submissions.  So you'll do so

12   within two weeks -- October 11th.

13           MR. VELEZ:  Yes, Judge.

14           THE COURT:  Okay.  So both sides will be given the

15   opportunity to supplement.

16           MR. BEST:  One last thing, Your Honor.  I'd just

17   like to state that these orders are, as you said, public

18   record and they're required to be -- well, the court order

19   from the criminal court would be part of the criminal court

20   record.  It's supposed to be and there's no reason for it to

21   not be --

22           THE COURT:  There's no reason to stop why you can't

23   go unless they're sealed.  But I don't know if they're

24   sealed.

25           MR. BEST:  The other one, though --

1          THE COURT:  Wait, wait.  Let me just raise this as

2     it occurs to me.  I don't know what happened in the criminal

3     court's proceeding.  If they're sealed, I'll ask one of the

4     defendants, and I think Mr. Rosinus probably has the

5     resources to do it because you have standard forms in your

6     office for release of records.  You will -- I'll ask you to -

7     - you'll have to promptly sign releases if the underlying

8     state court cases are sealed.  Okay?

9          MR. BEST:  All right.  But as far as the order

10    transferring from -- that allegedly exist in transferring me

11    from Rikers to Creedmoor, that's in Creedmoor's possession.

12    I tried to obtain that --

13         THE COURT:  Well, I don't know, but --

14         MR. BEST:  -- but it should be --

15         THE COURT:  -- as I said --

16         MR. BEST:  -- because it's --

17         THE COURT:  -- Mr. --

18         MR. BEST:  -- part of their record.  It should be

19    part of their record.

20         THE COURT:  Anyway, Mr. Velez will try to look for

21    them and if there is a need for releases to be signed, I want

22    the releases sent promptly to Mr. Best and you should

23    promptly return them.

24         And I understand if you don't -- if you have to get

25    releases, then you may need to get an extension of time.  And

1          you'll tell me what the situation is.  I will certainly grant

2          an extension if that's necessary.

3                    MR. BEST:  I'd just like to state that I don't

4          believe that there is a second order, that there was no

5          lawful transfer, so the failure to produce their order or

6          copy thereof --

7                    THE COURT:  Mr. Best?

8                    MR. BEST:  -- it should be considered evidence that

9          there was no such order.

10                   THE COURT:  Mr. Best, I don't speculate.  You

11         want -- if you want to speculate, you can, but I will say --

12                   MR. BEST:  All right, Judge.

13                   THE COURT:  -- you're just speculating.

14                   MR. BEST:  I started to say that in the event that

15         they fail to produce a second order, it should be considered

16         as evidence that one did not exist.

17                   THE COURT:  I can't even -- I'm not even willing to

18         make the statement that there should be one order, two

19         orders, 15 orders.  I will wait to see what's produced.

20                   MR. BEST:  All right, Judge.

21                   THE COURT:  Okay.  Thank you.

22                   MR. VELEZ:  Thank you, Your Honor.

23                   THE COURT:  So if we have another conference, I

24         just want to impress upon you, Mr. Best --

25                   MR. BEST:  Yes, Your Honor.

1          THE COURT:  -- I expect you to come on time.

2          MR. BEST:  Yes, ma'am.

3          THE COURT:  Okay.  All right.

4       (Proceedings concluded at 12:35 p.m.)

5       I, CHRISTINE FIORE, Certified Electronic Court Reporter

6    and Transcriber and court-approved transcriber, certify that

7    the foregoing is a correct transcript from the official

8    electronic sound recording of the proceedings in the above-

9    entitled matter.

10

11   *Christine Fiore*

12   _____          October 4, 2013

13        Christine Fiore, CERT

14          Transcriber

15

16

17

18

19

20

21

22

23

24