UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -- - X

HILARY BEST,

                Plaintiff,

                            REPORT AND
                            RECOMMENDATION

       - against -

                            CV-12-6142 (NGG)(MDG)

MYLES SCHNEIDER, ANKUR SARAIYA,
MICHAEL HOGAN, ANN MARIE BARBAROTTA,
MARIA LOURDES GONZALES, PHILIP NINAN,
YEVGENIY KHADOAROV,

                Defendants.

- - - - - - - - - - - - - - - - - - -X

GO, United States Magistrate Judge:

    Plaintiff pro se and in forma pauperis Hilary Best brings

this action pursuant to 42 U.S.C. § 1983 alleging that the

defendants, acting under color of state law, violated his

constitutional rights under the Fourth, Fifth, Sixth, Eighth,

Thirteenth and Fourteenth Amendments in connection with his

involuntary commitment. Amended Complaint ("Am. Comp.") (ct.

doc. 6) at 4. In his order granting plaintiff's motion to

proceed in forma pauperis, the Honorable Nicholas G. Garaufis sua

sponte dismissed all claims asserted in plaintiff's Amended

Complaint brought against defendants Judge Jennifer Schecter and

Assistant District Attorney Kevin Rooney ("ADA Rooney"). See

Best v. Schecter, 2013 WL 132733, at *2 (E.D.N.Y. 2013). The

remaining defendants, Drs. Myles Schneider and Ankur Saraiya,

psychiatrists at Bellevue Hospital Center (the "City

Defendants"), and Ann Marie Barbarotta, Maria Lourdes Gonzales, Philip Ninan and Yevgeniy Khaldarov[1] (the "State Defendants") move to dismiss the claims against them.

PERTINENT FACTS

The following facts are based on the allegations in plaintiff's Amended Complaint,[2] which are assumed to be true for purposes of this motion, and official records regarding plaintiff's incarceration and involuntary commitment, which this Court requested at a hearing on September 6, 2013.

Plaintiff was found unfit to stand trial pursuant to Article 730 of the New York Criminal Procedure Law ("C.P.L.") on September 7, 2012, following his arrest for harassment and stalking. Ct. docs. 70-2, 70-3. He alleges that after he moved to dismiss the charges against him, Judge Schecter revoked his bail on July 17, 2012 and, acting in concert with ADA Rooney, commenced proceedings under C.P.L. § 730 to commit him as a means to keep him detained. Am. Comp. at 4-5, top paragraph. Defendants Myles Schneider and Ankur Saraiya are psychiatrists at Bellevue Hospital who submitted mental competency reports dated August 22, 2012 to the Criminal Court concerning plaintiff's fitness to stand trial. See Am. Comp. at 5-6 and attachments

---

[1] Plaintiff misspelled Dr. Khaldarov's name in the caption of the amended complaint as "Khadoarov."

[2] Plaintiff has sought leave to file a Second Amended Complaint which will be addressed in a separate order. The motions to dismiss of defendants are based on the claims asserted in the Amended Complaint.

(ct. doc. 6-1).  Plaintiff complains that the reports "failed to comply with the mandates of C.P.L. § 730.10(8)," that the doctors did not conduct their examinations of plaintiff pursuant to C.P.L. § 730.20(3) and that the doctors "fabricated conclusions regarding [plaintiff's] mental state" and "falsely alleg[ed] that [he was] an incapacitated person."  Id. at 5.

According to the records of the Criminal Court, County of New York, the proceedings in New York County were dismissed when the Court issued a Final Order of Observation dated September 7, 2012 pursuant to C.P.L § 730.40 and remanded Mr. Best for observation.  Ct. doc. 70-3 at 1, 3.  On December 3, 2012, the Division of Forensic Services of the Bureau of Institutional and Transitional Services designated Creedmoor Psychiatric Center ("Creedmoor") to receive Mr. Best for care and treatment.  Id. at 2.[3]

Plaintiff was held at Rikers Island until December 4, 2012 when he was admitted to Creedmoor.  See Am. Compl. at 6, ¶ (b);

---

[3]At oral argument on the motion, the Court expressed its concern that plaintiff was held at Rikers Island for almost 90 days after the final order of observation issued and the underlying criminal charges were dismissed.  Transcript of oral argument held on September 6, 2013 ("Tr.") at 13.  At the argument, the plaintiff explained that he was held during that period pursuant to unrelated criminal charges pending against him in Bronx County.  Id. at 13-14. Following oral argument, by letter dated September 17, 2013, the State defendants submitted a copy of the docket sheet from plaintiff's criminal case in the Bronx.  See ct. doc. 70-4.  The docket sheet submitted shows that plaintiff was remanded after failing to post bond.  Id.  Since it is undisputed that plaintiff was held at Rikers Island because of a pending Bronx County case, and, since plaintiff has not expressly brought a claim relating to the length of his detention between the issuance of the final order of observation and his commitment at Creedmoor, any issue of plaintiff's confinement is limited to his confinement at Creedmoor.

ct. doc. 72-1; ct. doc. 6-1 at 15.  Plaintiff's admission was converted to "involuntary status" on December 5, 2012.  <u>See</u> ct. doc. 6-1 at 15.  Defendant Creedmoor Executive Director Dr. Ann Marie Barbarotta executed an application for plaintiff's involuntary admission for up to 60 days upon the certifications of defendants Dr. Maria Lourdes Gonzales and Dr. Philip Ninan, two psychiatric doctors at Creedmoor, which were confirmed by defendant Khaldarov.  <u>Id</u>. at 15-18.

Plaintiff requested a hearing pursuant to Mental Hygiene Law ("M.H.L.") § 9.31 to review the need for involuntary care and treatment.  On January 2, 2013, a hearing was held before the Honorable Martin J. Schulman in New York State Supreme Court.  Def. Mot. to Dismiss, Exh. B (ct. doc 60).  At the conclusion of the hearing after the plaintiff had been removed from the courtroom, the Court denied plaintiff's request for relief.  <u>Id</u>. at 39.  Plaintiff requested a rehearing and review by Order to Show Cause under M.H.L. § 9.35 before a different judge, which was orally amended on January 22, 2013 to a <u>de novo</u> hearing with a jury. <u>Id.</u>, Exh. C (ct. doc. 55-1).  This request was later denied as moot when the order that plaintiff had appealed expired on February 6, 2013.  <u>Id.</u>, Exh. D (ct. doc. 55-1).

While these court proceedings were pending, defendants filed an application under M.H.L. § 9.33 with the State Court for plaintiff's continued retention for an additional 6 months at Creedmoor.  <u>Id.</u>, Exh. E (ct. doc. 61).  Justice Schulman held a hearing on February 12, 2013 and ordered plaintiff's further

-4-

involuntary retention for a period not to exceed six months.
Id., Exhs. F (ct. doc. 61), G (ct. doc. 55-1).  At both the
January 2, 2013 and February 12, 2012 hearings, counsel for
Creedmoor Psychiatric Center called Dr. Ella Brodsky as an expert
witness to testify.  See Transcript of 1/2/13 Hrg. at 3-29 (Exh.
B, ct. doc. 60 at 9-35); Transcript of 2/12/13 Hrg. at 4-29 (Exh.
F, ct. doc. 61 at 18-33).  At the second hearing, she reiterated
observations and findings made by other doctors at Creedmoor --
that because, inter alia, plaintiff continued to demonstrate
extreme paranoia, continued to refuse treatment, and was
collecting personal information about a prior doctor, plaintiff
was "potentially dangerous."  Ct. doc. 61 at 25-26.

    On February 19, 2013, plaintiff filed a request for a de
novo hearing and review by a jury under M.H.L. § 9.35.  Id., Exh.
H (ct. doc. 55-1).  After a nine day jury trial and verdict in
his favor, plaintiff was released from Creedmoor on March 21,
2013.  Reply Mem. in Supp. of Def.'s Mot. to Dismiss (ct. doc.
59) at 7; letter to Court from plaintiff dated 4/19/13 (ct. doc.
42).

     At the time he filed his Amended Complaint, plaintiff was
still incarcerated and claimed he was subject to continuing false
imprisonment and malicious prosecution.  At oral argument on
September 6, 2013, plaintiff conceded that he was not
administered medication at Creedmoor, that his request for
injunctive relief is moot and withdrew his claim against
defendant Hogan.  Tr. at 23, 26.

DISCUSSION

I. <u>Standard For Motion to Dismiss</u>

Defendants move to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12 (b)(6). Pleadings must present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8 (a)(2); <u>Swierkiewicz v. Sorema</u>, 534 U.S. 506, 512 (2002); <u>Carrion v. Singh</u>, 2013 WL 639040, at *2 (E.D.N.Y. 2013). The complaint must show "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 677 (2009). "Threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." <u>Id</u>. at 678. A court must look at a <u>pro se</u> plaintiff's pleadings liberally and interpret them to "'raise the strongest arguments that they suggest.'" <u>Triestman v. Federal Bureau of Prisons</u>, 470 F.3d 471, 474 (2d Cir. 2006) (quoting <u>Pabon v. Wright</u>, 459 F.3d 241, 248 (2d Cir. 2006); <u>see</u> <u>Erickson v. Pardus</u>, 551 U.S. 89 (2007); <u>Tracy v. Freshwater</u>, 623 F.3d 90, 100-02 (2d Cir. 2010) (discussing "special solicitude" afforded <u>pro se</u> litigants and that court should be "particularly solicitous" of <u>pro se</u> litigants who bring civil rights claims and those who are incarcerated).

On a motion to dismiss, as to those factual allegations that are well-pled, the court must determine whether they "plausibly give rise to an entitlement to relief." <u>Iqbal</u>, 556 U.S. at 679.

-6-

Plausibility "is not akin to a probability requirement" but it requires more than "a sheer possibility that a defendant has acted unlawfully." Id. at 678. "In ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 113 (2d Cir. 2010) (internal quotation marks and citations omitted). The factual allegations in the complaint are accepted as true and all reasonable inferences are drawn in plaintiff's favor. See Rescuecom Corp. v. Google Inc., 562 F.3d 123, 127 (2d Cir. 2009).

"'[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'" Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)). The court may also consider matters subject to judicial notice, such as decisions in related proceedings, without converting the motion to one for summary judgment. See Jackson v. N.Y. State, 523 Fed. App'x 67, 68 (2d Cir. 2013).

Plaintiff attached to the Amended Complaint the following documents: the Psychiatric Examination Reports of defendants Schneider and Saraiya; the Application for Involuntary Admission; the Certificates of defendants Ninan and Gonzales; and Progress Notes from Creedmoor. See ct. doc. 6-1. The State Defendants have submitted the following documents in support of their motion

to dismiss: a transcript of January 2, 2013 hearing before Justice Shulman; plaintiff's Order To Show Cause for rehearing; February 11, 2013 order of dismissal; application by Creedmoor for plaintiff's continued retention; a transcript of February 12, 2013 hearing before Justice Shulman; February 13, 2013 order of Justice Shulman; plaintiff's Order to Show Cause; and the final order of observation.  See ct. docs. 55-1, 60, 61, 70-3.  The Court can take judicial notice of the court filings in plaintiff's state criminal and civil litigations.  See Global Network Commc'ns, Inc. v. City of N.Y., 458 F.3d 150, 157 (2d Cir. 2006).

Besides arguing that plaintiff has failed to state a claim, both defendants have moved to dismiss on grounds of immunity. The State defendants also argue that review of any state judgment is barred under the Rooker-Feldman doctrine and that they are entitled to qualified immunity.  This Court will first address the contentions regarding immunity and Rooker-Feldman, which directly affect the jurisdiction of this Court to consider the claims asserted, and will address the claim of qualified immunity in connection with the substantive claims asserted.

II. Statutory Schemes at Issue

A. Commitment of Criminal Defendants -- C.P.L. § 730.40

Under New York law, when a state court is presented with a defendant who may be unfit to stand trial, the court must order an examination of the defendant.  See C.P.L. § 730.30(2).  If the

court finds a defendant charged with a minor misdemeanor or felony incompetent to stand trial, the court must issue a final or temporary order of observation. Id. § 730.40(1). The order commits the defendant "to the custody of the [Commissioner of Mental Health] for care and treatment . . . for a period not to exceed ninety days from the date of the order." Id. If the defendant was charged with a misdemeanor, the order must be final. A final order of observation bars the state from any further prosecution and requires the court to dismiss the charges against the defendant. Id.

Following a New York State Supreme Court, Westchester County decision finding CPL § 730.40 unconstitutional, Ritter v. Surles, 144 Misc.2d 945 (N.Y. Sup. Ct. 1988), the Commissioner of the Office of Mental Health ("OMH") issued a memorandum ordering OMH facilities not to confine individuals remanded pursuant to C.P.L. § 730.40 for more than 72 hours, as opposed to the 90-day period permitted by statute. See Charles W. v. Maul, 214 F.3d 350, 355-357 (2d Cir. 2000). During this 72-hour period, OMH must determine if civil commitment was appropriate for the defendant, and if not, the defendant had to be released. Id.

As the court in Ritter explained, the standards for commitment are different when a person is acquitted of murder by reason of insanity as opposed to those "merely charged with crimes," as with the commitment under C.P.L. § 730.40. Ritter, 144 Misc. 2d at 949. This is because the acquitted defendant has been found beyond a reasonable doubt of committing a criminal and

dangerous act.  Id.  In contrast, because the charges against a person accused of misdemeanors are dismissed under Section 730.40, such "individuals must be granted the same constitutional rights afforded other mentally ill citizens."  Id.

B. Civil Commitment under M.H.L. § 9.27

New York's Mental Hygiene Law permits the involuntary commitment of a mentally ill person "upon the certificate of two examining physicians, accompanied by an application for the admission of such person." N.Y. M.H.L. § 9.27.  The application for admission can be submitted by "the director of the hospital . . . in which the patient is hospitalized," or "a qualified psychiatrist who is . . . treating such person for a mental illness in a facility licensed or operated by the [New York] office of mental health."  Id. § 9.27(b)(6),(11).  The director of the hospital cannot admit the patient until the patient is examined by a third member of the psychiatric staff other than the original examining physicians who confirms that the patient should be admitted.  Id. § 9.27(e).

Although absent from the text of the statute, courts have made clear that the Constitution requires a finding that the mentally ill patient is a danger to himself or others before he may be involuntarily confined.  See O'Connor v. Donaldson, 422 U.S. 563, 572 (1975); Project Release v. Prevost, 722 F.2d 960, 973-974 (2d Cir. 1983) (finding that New York's statutory scheme governing involuntary confinement met the requirements of due process); In Re Harry M, 96 A.D.2d 201, 206-08 (2d Dep't 1983).

-10-

Following a commitment, the patient may request a post-deprivation hearing to determine the need for involuntary care and treatment. <u>See</u> M.H.L. § 9.31. The hearing must take place no later than five days after the court recieves notice. <u>Id</u>. At the hearing, the court can examine and hear testimony from the alleged mentally ill person if it is appropriate. <u>Id</u>.

III. <u>Motion of the City Defendants -- Immunity</u>

City defendants Dr. Schneider and Dr. Saraiya argue that they are entitled to absolute immunity for the claims brought against them in their personal capacities. Plaintiff alleges that Dr. Schneider and Dr. Saraiya fabricated their conclusions regarding plaintiff's mental state and his ability to stand trial, falsely alleged that plaintiff was an incapacitated person and lacked the capacity to understand the criminal proceedings against him or assist in his own defense, and falsely represented that plaintiff should receive psychiatric hospitalization and treatment in order to attempt to restore him to competency.

As the Supreme Court has long recognized, Section 1983 did not abrogate immunities available under common-law. <u>Rehberg v. Paulk</u>, 132 S.Ct. 1497, 1502 (2012). In this regard, "[c]ertain actors associated with the courts enjoy absolute, quasi-judicial immunity from suit because such immunity is 'necessary to protect the judicial process.'" <u>Gross v. Rell</u>, 695 F.3d 211, 215 (2d Cir. 2012) (quoting <u>Burns v. Reed</u>, 500 U.S. 478, 485 (1991)). Thus, judges performing judicial functions are entitled to

absolute immunity.  Hili v. Sciarrotta, 140 F.3d 210, 213 (2d Cir. 1998).

The Second Circuit has extended this protection to New York and federal probation officers who are required to submit reports to the courts for consideration in sentencing.  See id.; Dorman v. Higgins, 821 F.2d 133, 136-39 (2d Cir. 1987).  Similarly, several courts in this circuit have held that medical professionals are afforded quasi-judicial immunity from suit for damages for conducting court-ordered examinations and producing corresponding reports concerning a defendant's competency to stand trial.  See Inesti v. Hicks, 2012 WL 2362626, at *16 (S.D.N.Y. 2012); Kalman v. Carre, 352 F. Supp. 2d 205, 208-09 (D. Conn. 2005); Hunter v. Clark, 2005 WL 1130488, at *2 (W.D.N.Y. 2005); accord Moses v. Parwatikar, 813 F.2d 891, 892 (8th Cir. 1987).  As with the New York probation officers at issue in Hili, courts have found there are adequate safeguards of a defendant's rights to justify conferring absolute immunity on doctors performing competency examinations.  Id.  After issuance of a psychiatrist's report, a criminal court "may . . . conduct a hearing to determine the issue of capacity" and a court "must conduct such hearing upon motion therefor by the defendant or by the district attorney."  N.Y. C.P.L. § 730.30.

Plaintiff alleges that after Judge Schecter and ADA Rooney improperly initiated proceedings under Section 730.10(1) despite knowing that plaintiff was not an incapacitated person, Drs. Schneider and Saraiya wrote "confirmed psychiatric reports."  Am.

-12-

Comp. at 5, 1st full par. Plaintiff also attaches copies of the psychiatric Examination Reports written by the doctors in which each set forth the results of examinations conducted pursuant to an order signed by Judge Schecter dated August 1, 2012. See ct. doc. 6-1. Both doctors diagnosed Mr. Best as suffering from Delusional Disorder, Erotomanic Type and concluded that he was an incapacitated person unable to proceed to trial. Id. at 2, 7. Since the examinations conducted by the two doctors were ordered by a court, I recommend dismissing plaintiff's personal capacity claims against Dr. Schneider and Dr. Saraiya on the grounds of absolute immunity.

As to the claims brought against Dr. Schneider and Dr. Saraiya in their official capacities, a suit against a city official in his official capacity is treated as a suit against the municipality itself. See Hafer v. Melo, 502 U.S. 21, 25 (1991). Accordingly, a plaintiff must allege that "the challenged acts were performed pursuant to a municipal policy or custom." Patterson v. Cty. of Oneida, 375 F.3d 206, 226 (2d Cir. 2004) (citing Monell v. Dep't of Social Servs., 436 U.S. 658, 692-94 (1978)). Plaintiff has failed to allege any facts suggesting that these defendants violated his constitutional rights pursuant to a policy or custom. See Smith v. Westchester Cty., 152 F.3d 920 (2d Cir. 1998) (affirming dismissal of pro se complaint that failed to allege policy or custom); Best v. City of N.Y., 2014 WL 163899, at *13 (S.D.N.Y. 2014) (adopting recommendation that pro se complaint be dismissed for failure to

-13-

allege policy or custom that violated plaintiff's rights); Maynard v. City of N.Y., 2013 WL 6667681, at *6 (S.D.N.Y. 2013). In fact, plaintiff has not even made conclusory allegations of a custom or policy. Rather, plaintiff's allegations are confined to the particular incident involving him. Thus, I recommend dismissing plaintiff's claims against Dr. Schneider and Dr. Saraiya in their official capacities.

IV. <u>Motion of State Defendants - Eleventh Amendment Immunity</u>

The State Defendants argue that the claims brought against them in their official capacities are barred by the Eleventh Amendment. Neither a state nor its employees sued in their official capacities are considered "persons" that can be sued under section 1983 because of the state's Eleventh Amendment immunity. <u>See</u> <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989); <u>Posr v. Court Officer Shield No. 207</u>, 180 F.3d 409, 414 (2d Cir. 1999). As plaintiff alleges, the State Defendants are employed at Creedmoor Psychiatric Center, a psychiatric hospital operated by the New York State Office of Mental Health. Defs.' Mem. at 3. Since the State Defendants enjoy immunity under the Eleventh Amendment, I recommend dismissing claims brought under section 1983 against the State Defendants in their official capacities.

V. <u>Motion of State Defendants -- Rooker-Feldman Doctrine</u>

The State Defendants move to dismiss for lack of

jurisdiction on Rooker-Feldman grounds.  Rooker-Feldman is a
narrow doctrine that prohibits "state-court losers" from asking a
federal district court to review a final state court judgment.
Hoblock v. Albany Cnty. Bd. Of Elections, 422 F.3d 77, 84 (2d
Cir. 2005).  "Underlying the Rooker-Feldman doctrine is the
principle, expressed by Congress in 28 U.S.C. § 1257, that within
the federal judicial system, only the Supreme Court may review
state-court decisions."  Id.  The Second Circuit requires that
four conditions be met in order for the Rooker-Feldman doctrine
to apply:

> First, the federal-court plaintiff must have lost in state
> court. Second, the plaintiff must 'complain[] of injuries
> caused by [a] state-court judgment[.]' Third, the plaintiff
> must 'invite district court review and rejection of [that]
> judgment[].' Fourth, the state-court judgment must have been
> 'rendered before the district court proceedings commenced' –
> i.e., Rooker-Feldman has no application to federal-court
> suits proceeding in parallel with ongoing state-court
> litigation.

Graham v. City of New York, 869 F. Supp. 2d 337, 347 (E.D.N.Y.
2012) (quoting Hoblock, 422 F.3d at 85).  The first and last
requirements are procedural while the second and third
requirements are substantive.  Spencer v. Bellevue Hospital, 2012
WL 1267886, at *4 (S.D.N.Y. 2012).

The State Defendants argue that all four requirements of the
Rooker-Feldman doctrine are met and thus plaintiff's claims are
barred.  However, the State Defendants concede in their reply
that plaintiff was released from Creedmoor on March 21, 2013,
after a nine-day jury trial was held pursuant to M.H.L. § 9.35.

Section 9.35 states:

> If a person who has been denied release or whose . . .
> continued retention . . . has been authorized pursuant to
> this article . . . be dissatisfied with any such order he
> may . . . obtain a rehearing and a review of the proceedings
> already had . . . [and] if the verdict of the jury . . . be
> that such person is not mentally ill . . . the justice shall
> forthwith discharge him.

N.Y. M.H.L. § 9.35.

The plaintiff is not a "state court loser." Although
plaintiff was denied release from Creedmoor by Justice Schulman,
he was ultimately released after he challenged that ruling by
means of a rehearing and review by jury trial. Rooker-Feldman
only applies when "the requested federal court remedy of an
alleged injury caused by a state court judgment would require
overturning or modifying that state court judgment." McNamara v.
Kaye, 360 Fed. App'x 177 (2d Cir. 2009); see Green v. Mattingly,
585 F.3d 97, 102 (2d Cir. 2009) (holding that temporary order
removing child from plaintiff's custody, which was subsequently
superseded by an order returning the child, was not a state-court
loss because there was "no final order of disposition" removing
child); McKnight v. Middleton, 699 F. Supp. 2d 507, 515 (E.D.N.Y.
2010) (finding that plaintiff's claims were not barred by Rooker-
Feldman since he did not seek to undo Family Court orders).
Here, plaintiff does not request that a state court judgment be
overturned. Having already been released from Creedmoor after a
rehearing, plaintiff seeks only monetary damages for his alleged
unlawful confinement. Therefore, plaintiff is not asking this

Court to "review and reject" a state court decision.

Moreover, plaintiff was held at Creedmoor from December 4, 2012 until January 2, 2013 pursuant to section 9.27 of the M.H.L. Since that period of retention did not result from a state court judgment, plaintiff's complaint for injuries during that period does not implicate the Rooker-Feldman doctrine. See June v. Blair, 2010 WL 8522831, at *9 (N.D.N.Y. 2010), adopted in part and rejected in part on other grounds by 2012 WL 1048463 (N.D.N.Y. 2012). Thus, I recommend denying the State Defendants' motion to dismiss for lack of subject matter jurisdiction.

VI. State Defendants' Motion to Dismiss for Failure to State a Claim

Plaintiff seeks monetary damages pursuant to 42 U.S.C. § 1983 for his involuntary commitment at Creedmoor Psychiatric Center "in violation of [his] due process and equal protection rights under the 4th, 5th, 6th, 8th, 13th and 14th Amendments to the United States Constitution." Am. Compl. at 4, ¶ IV. In order to state a claim under section 1983, plaintiff must allege that defendants deprived him of a right, privilege or immunity guaranteed by the Constitution or the laws of the United States. See 42 U.S.C. § 1983; see Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994); Spencer v. Bellevue Hospital, 2012 WL 1267886, at *6 (S.D.N.Y. 2012). Broadly construing plaintiff's complaint, it appears that plaintiff is contending deprivation of his due process and equal protection rights under the Fourteenth

Amendment, as well as rights protected under the other Amendments alleged.  In moving to dismiss, the State defendants contend that plaintiff cannot show that he was subject to an illegal civil commitment in violation of plaintiff's constitutional rights. Involuntary commitment raises constitutional issues under the Fourth Amendment's guarantee against unreasonable seizures and the Fourteenth Amendment's right to due process.  See Rodriguez v. City of New York, 72 F.3d 1051, 1061 (2d Cir. 1995) (due process); Glass v. Mayas, 984 F.2d 55, 58 (2d Cir. 1993) (Fourth Amendment); Eze v. City Univ. of N.Y. at Brooklyn College, 2011 WL 6780652, at *3 (E.D.N.Y. 2011).  These claims will be addressed first.

A. Due Process Rights Under the Fourteenth Amendment

"Commitment to a mental hospital produces a massive curtailment of liberty."  Vitek v. Jones, 445 U.S. 480, 491 (1980) (internal citations omitted).  "[E]rroneous commitments, of course, implicate the individual's interest in liberty." Goetz v. Crosson, 967 F.2d 29, 33 (2d Cir. 1992).  Substantive due process requires that only patients who are found to be a danger to themselves or others can be involuntarily committed. Rodriguez v. City of New York, 72 F.3d 1051, 1061 (2d Cir. 1995); Jelich v. Hogan, 2009 WL 3497495, at *2 (E.D.N.Y. 2009) (citing Rodriguez, 72 F.3d at 1061).  The Second Circuit has ruled that M.H.L. § 9.27 satisfies due process and provides appropriate safeguards to ensure that non-dangerous persons are not

erroneously confined.  See Project Release, 722 F.2d at 973.

When a doctor's decision to involuntarily commit a patient is based on "substantive and procedural criteria that are . . . substantially below the standards generally accepted in the medical community," however, substantive due process has been violated.  See Bolmer v. Oliviera, 594 F.3d 134, 143 (2d Cir. 2010).  "Substantive due process prohibits states from involuntarily committing nondangerous mentally ill individuals." Id. at 142.  On the other hand, due process does not demand that the physician's determination be correct.  See Rodriquez, 72 F.3d at 1061; Carrion v. Singh, 2013 WL 639040, at * 9 (E.D.N.Y. 2013); Mittelman v. County of Rockland, 2013 WL 1248623, at *25 (S.D.N.Y. 2013) ("commitment pursuant to Mental Hygiene Law article 9 is privileged in the absence of medical malpractice").

Plaintiff alleges that he is "not mentally ill, . . . incapacitated . . . nor do[es] [he] require hospitalization of any kind, nor do[es] [he] suffer from any condition that prevents [him] from understanding or realizing [his] needs, or from caring and providing for [his] wellbeing.  Nor does [he] have any prior history of psychiatric hospitalization, and [has never] been subjected to Psychiatric medication."  Am. Comp. at 8.  Plaintiff essentially claims that he was involuntarily committed to Creedmoor even though he is not mentally ill or a danger to himself or others.

Plaintiff attached to the complaint the Application for

Involuntary Admission on Medical Certification signed by defendants Barbarotta and Khaldarov and the Certifications signed by Dr. Gonzales and Dr. Ninan. Ct. doc. 6-1 at 15-18. Other than the form language contained therein, there is no information in the documents submitted that states that plaintiff was dangerous. Ct. doc. 6-1 at 17, 18. Dr. Gonzales noted that plaintiff had "no prior psychiatric hospitalizations." Id. at 17. The progress notes from Creedmoor dated December 5, 2012, the day plaintiff was involuntarily committed, state that "[plaintiff] has not displayed any violent, assaultive, threatening or aggressive behavior." Id. at 24. Similarly, defendant Barbarotta, Director of Creedmoor, wrote in the application for involuntary admission on December 5, 2012 that plaintiff "presented with paranoid delusions" and has poor insight, but does not mention that he is a danger to others or himself. Id. at 16.

While this Court recognizes that plaintiff was arrested for stalking and harassment, none of the charges are felonies[4] and the conduct involved occurred in 2010 and 2011. Ct. 70-2 at 4-5. The misdemeanor indictment filed in 2011 describes events relating to plaintiff making repeated unwanted telephone calls to a Tiomi Johnson after she told him to stop on June 23, 2010. Ct. 70-2 at 4. The complaint further states that plaintiff made nine

---

[4] Specifically, plaintiff was charged with Stalking in the 4th Degree, N.Y. Penal Law 120.45(2), a class B misdemeanor; Harassment in the First Degree, PL 240.25, a violation; and Aggravated Harassment in the Second Degree, PL 240.30(1)(a), a class A misdemeanor.

phone calls between August 1, 2011 and August 13, 2011 to Tiomi

Johnson and that he stopped Lucretia Johnson, mother of Tiomi

Johnson, on August 18, 2011 to ask why she was hiding his wife

and child from plaintiff.  <u>Id.</u> at 5.  There is nothing in the

indictment or documents submitted which indicate that plaintiff

posed a danger to Tiomi Johnson at the time of his involuntary

commitment more than a year later.  Although Dr. Brodsky referred

to plaintiff's prior outpatient treatment and past convictions

and opined in her testimony at the hearings in January and

February 2013 that he was "potentially dangerous," such testimony

involved facts challenged by plaintiff and was contrary to the

statements of Dr. Gonzales in her certification.  Without more

information, assuming the truth of plaintiff's allegations, I

find that the amended complaint sufficiently states a claim for a

violation of plaintiff's substantive due process rights.  <u>See</u>

<u>Cortlandt v. Westchester Cty.</u>, 2007 WL 3238674, at *6 (S.D.N.Y.

2007); <u>cf.</u> <u>Glass</u>, 984 F.2d at 57 (granting <u>summary judgment</u> where

plaintiff was described as "hostile, guarded, angry, suspicious,

uncooperative and paranoid"); <u>Drozdik v. City of N.Y.</u>, 2003 WL

366639, at *4 (S.D.N.Y. 2003) (granting <u>summary judgment</u> where

doctors stated that plaintiff was "psychotic, acutely paranoid,

delusional and threatening" and "anxious, hostile aggressive and

threatening").

To establish a procedural due process violation under

section 1983, plaintiff must allege that he possessed an actual

liberty interest and was deprived of that interest without being afforded sufficient process. <u>See</u> <u>Tellier v. Fields</u>, 280 F.3d 69, 79-80 (2d Cir. 2000). The State Defendants argue that plaintiff does not state a due process claim because plaintiff concedes that he was held at Creedmoor pursuant to Article 9 of the M.H.L. and the Second Circuit has held that Article 9 satisfies due process. Although the Second Circuit upheld a facial challenge to Article 9 in <u>Project Release</u>, it "explicitly left open the possibility of an as-applied challenge." <u>Bailey v. Pataki</u>, 708 F.3d 391, 405 (2d Cir. 2013) (discussing <u>Project</u>, 722 F.2d at 970-71). Plaintiff alleges here that the certifications executed by Dr. Gonzales and Dr. Ninan are "fraudulent" since both doctors based their opinions on earlier psychiatric reports from August 2012, rather than examining plaintiff. Am. Compl. at 7. In other words, plaintiff alleges that the State Defendants did not comply with the procedures proscribed by Article 9. Therefore, I recommend finding that plaintiff states a claim for violation of his procedural due process rights.

Although not discussed by the State Defendants, plaintiff's factual allegations may also state a claim for a violation of procedural due process for the State Defendants' failure to afford plaintiff a pre-deprivation hearing. In <u>Zinermon v. Burch</u>, 494 U.S. 113 (1990), a patient claimed that he was entitled to a pre-deprivation hearing where he was voluntarily committed to a state mental hospital. The plaintiff argued that

as a paranoid schizophrenic, he was unable to give informed consent for his admission.  The Supreme Court found that a post-deprivation hearing might satisfy due process where a pre-deprivation hearing would be "unduly burdensome in proportion to the liberty interest at stake or where the State is truly unable to anticipate and prevent a random deprivation of a liberty interest."  494 U.S. at 132 (internal citation omitted).  "[W]here the State feasibly can provide a predeprivation hearing," however, "it generally must do so regardless of the adequacy of a postdeprivation . . . remedy."  Id.  The Court held that plaintiff's allegations were sufficient to state a claim for violation of his procedural due process rights.

The Second Circuit's decision in Bailey v. Pataki, 708 F.3d 391 (2d Cir. 2013) is also instructive.  State prisoners brought a section 1983 action alleging that their involuntary commitments following the expiration of their sentences for sexually based criminal offenses constituted violations of their procedural due process rights.  At the expiration of their sentences, the inmates were evaluated according to the procedures provided by M.H.L. § 9.27.  The Second Circuit found that under the circumstances, it would not have been "unduly burdensome" for the State to provide a predeprivation hearing to the inmates.  There were no "emergent circumstances" that prevented the State from planning for and providing the inmates with a predeprivation hearing.  On the contrary, the need for the inmate's evaluation

came at a "predictable point," at the expiration of their sentences.  The Second Circuit found that plaintiffs had stated a procedural due process claim.

Similarly, the State had ample time here to provide plaintiff with a pre-deprivation hearing.  Plaintiff was in custody for almost 90 days following the issuance of the final order of commitment.  Although generally, "[t]he state will not necessarily be prepared to undertake civil commitment proceedings immediately after criminal charges are dismissed," 214 F.3d at 359, the State had the opportunity to prepare for a hearing prior to plaintiff's involuntary commitment at Creedmoor.  In fact, plaintiff requested a hearing under section 9.31 which was not held until January 2, 2013, almost one month after plaintiff was involuntary committed on December 5, 2012.  Affording plaintiff a pre-deprivation hearing would not have been "unduly burdensome" in light of the significant liberty interest at stake.  Since plaintiff was already confined, he presented no immediate danger to the community that would require denying him a pre-deprivation hearing.

     B.   <u>Fourth Amendment</u>

Plaintiff asserts a claim under the Fourth Amendment, which prohibits "unreasonable seizures."  A "seizure" for Fourth Amendment purposes occurs "when government actors have, 'by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen.'"  <u>Glass</u>, 984 F.2d at 58

(quoting <u>Graham v. Connor</u>, 490 U.S. 386, 395 n.10 (1989)) (other internal citations omitted).  Involuntary commitment unquestionably constitutes a "seizure" by the government.  <u>Id.</u> However, an involuntary commitment does not violate the Fourth Amendment if "'there are reasonable grounds for believing that the person seized' is dangerous to herself or to others." <u>Anthony v. City of New York</u>, 339 F.3d 129, 137 (2d Cir. 2003) (quoting <u>Glass</u>, 984 F.2d at 58).

As discussed above, the certifications and progress notes attached to plaintiff's complaint do not, on the record before the Court, establish that there was a reasonable basis for finding that plaintiff was dangerous to himself or others. Rather, the treatment notes indicate that plaintiff was not exhibiting threatening or aggressive behavior.  In addition, plaintiff contends that he has no prior history of psychiatric hospitalization and has never been treated with psychiatric medication.  Am. Comp. at 8.  Thus, plaintiff's allegations are sufficient to survive a motion to dismiss.  <u>See</u> <u>Bryant v. Steele</u>, 2014 WL 2475608, at *10 (E.D.N.Y. 2014); <u>Cortlandt</u>, 2007 WL 3238674, at *5.

C.   <u>Equal Protection Under the Fourteenth Amendment</u>

Although not discussed by the State Defendants, the City defendants challenge the sufficiency of the claim that plaintiff mentions in the complaint for violating his equal protection rights.  The equal protection clause of the Fourteenth Amendment

provides that the government must treat similarly situated people alike. See City of Cleburne, Texas v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985); Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995). To state a cognizable claim for equal protection, plaintiff must allege facts that plausibly suggest that he was treated differently from others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class. See Giano, 54 F.3d at 1057. Alternatively, under a "class-of-one" theory, plaintiff must allege that he was intentionally treated differently from similarly situated individuals without any rational basis. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006). Here, plaintiff does not describe how he has been treated differently than others who are similarly situated. Thus, I recommend that plaintiff's equal protection claim be dismissed.

D. Fifth, Sixth, Eighth and Thirteenth Amendment Claims

The State Defendants argue, correctly, that plaintiff's allegations do not implicate his rights under the Fifth, Sixth or Eighth Amendments. In addition, plaintiff does not state a claim under the Thirteenth Amendment.

The Fifth Amendment Due Process Clause applies only to the federal government. See Pecou v. Forensic Committee Personnel, 2010 WL 2787588, at *8 (E.D.N.Y. 2010); Cortlandt, 2007 WL 3238674, at *5. Here, plaintiff does not allege federal action

and therefore his Fifth Amendment claim should be dismissed.

The Sixth Amendment applies only to criminal proceedings. See Eze, 2011 WL 6780652, at *3 n.4; Cortlandt, 2007 WL 3238674, at *6. Since the allegations in the complaint do not implicate the Sixth Amendment, any claim based on the Sixth Amendment should be dismissed.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. However, the Eighth Amendment applies only to "imprisonment pursuant to a criminal conviction." Pecou, 2010 WL 2787588 at *8; see also DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189 (1989) ("[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law."). Civil involuntary commitment of mentally ill patients does not constitute cruel and usual punishment under the Eighth Amendment. See Carrion v. Singh, 2013 WL 639040, at *7 (E.D.N.Y. 2013); Warheit v. City of New York, 2006 WL 2381871, at *11 (S.D.N.Y. 2006). Therefore, plaintiff's claim under the Eighth Amendment should be dismissed.

Plaintiff also cites the Thirteenth Amendment in his amended complaint. The Thirteenth Amendment prohibits all forms of involuntary labor. See McGarry v. Pallito, 687 F.3d 505, 510 (2d Cir. 2012). "In order to state a claim under the Thirteenth Amendment, a plaintiff must demonstrate he has been subjected to

-27-

'compulsory labor akin to African slavery which in practical operation would intend to produce like desirable results.'" <u>Ford v. Nassau County Executive</u>, 41 F. Supp. 2d 392, 400-401 (E.D.N.Y. 1999) (quoting <u>Butler v. Perry</u>, 240 U.S. 328, 332 (1916)). Plaintiff does not allege that he was forced to work while he was involuntarily committed at Creedmoor and thus the Thirteenth Amendment is not applicable.

For the foregoing reasons, I recommend that defendant's motion to dismiss be granted in regards to plaintiff's Fifth, Sixth, Eighth and Thirteenth Amendment claims.

    E.   <u>Qualified Immunity</u>

Generally, a qualified immunity defense cannot support a 12(b)(6) motion to dismiss for failure to state a claim. <u>See</u> <u>McKenna v. Wright</u>, 386 F.3d 432, 435 (2d Cir. 2004); <u>Taylor v. Vermont Dep't of Educ.</u>, 313 F.3d 768, 793 (2d Cir. 2002). A defendant asserting a qualified immunity defense on a motion to dismiss "faces a formidable hurdle . . and is usually not successful." <u>Field Day, LLC v. County of Suffolk</u>, 463 F.3d 167, 191-92 (2d Cir. 2006). A qualified immunity defense can be asserted on a 12(b)(6) motion only if "the defense is based on facts appearing on the face of the complaint." <u>McKenna</u>, 386 F.3d at 436.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory

or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 817 (1982).  To determine if qualified immunity is appropriate, the court must look to the objective reasonableness of the officials' conduct. Id. at 818.  The State Defendants Barbarotta, Gonzales, Ninan and Khaldarov are entitled to qualified immunity if (1) the facts, most favorable to the plaintiff, do not make out a constitutional violation or (2) the right was not clearly established at the time of plaintiff's commitment.  See Bolmer v. Oliveira, M.D., 594 F. 3d 134, 142 (2d Cir. 2010).  "As a part of this inquiry, the Court considers whether 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"  Bailey, 708 F.3d at 404 (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)).

The State Defendants do not argue that plaintiff's constitutional rights were not clearly established.  Instead, the State Defendants largely repeat their argument that plaintiff's allegations do not state a constitutional violation.  See State Defs.' Mem. at 16-17.  As discussed above, I find that the plaintiff has sufficiently alleged a deprivation of his rights to due process and his rights under the Fourth Amendment.  First, plaintiff alleges that the State Defendants did not afford him the procedural protections provided by section 9.27.  Second, as to the allegations of substantive due process violations, this Court cannot determine on the basis of the allegations in the

complaint if the criteria used by defendants were "substantially below the standards generally accepted in the medical community." Rodriguez, 72 F.3d at 1063. "What those standards are is a question of fact." Bolmer, 594 F.3d at 142; see Rodriguez, 72 F.3d at 1063. Expert testimony is generally required "to establish the relevant medical standards that were allegedly violated." Olivier v. Robert L. Yeager Mental Health Ctr., 398 F.3d 183, 190 (2d Cir. 2005); Mittelman, 2013 WL 1248623, at *24 ("[w]hether someone should be committed for psychiatric evaluation is a medical question to be determined by expert testimony"). Whether the defendant doctors performed in conformity with those standards is also a question of fact. See Rodriguez, 72 F.3d at 1064.

Finally, under the Fourth Amendment, whether the commitment determination was based on "reasonable grounds for believing that the person seized is dangerous to herself or to others" is also a question of fact. See Amato v. Hartnett, 936 F. Supp. 2d 416, 435 (S.D.N.Y. 2013) (denying summary judgment on Fourth Amendment involuntary commitment claim).

Both the facts surrounding plaintiff's commitment and the standards that apply to the doctors' determination cannot be resolved on the face of the complaint. Although a factual basis may be established for qualified immunity after some discovery, at this stage in the proceedings, I respectfully recommend that defendant's motion to dismiss on the basis of qualified immunity

be denied.

CONCLUSION

For the foregoing reasons, I respectfully recommend that the City defendants' motion to dismiss be granted and the State defendants' motion to dismiss be granted in part and denied in part. Specifically, this Court recommends dismissal of the following: (1) all the claims asserted against the City defendants (Drs. Myles Schneider and Ankur Sariya); (2) all claims against the State Defendants in their official capacities (Anne Marie Barbarotta, Maria Lourdes Ganzalez, Philip Ninn and Yevgeniy Khaldarov); (3) all claims for violation of plaintiff's Equal Protection rights under the Fourteenth Amendment and for violation of his rights under the Fifth, Sixth, Eighth and Thirteenth Amendments; and (4) all claims regarding forced medication asserted against Michael Hogan and for injunctive relief in light of plaintiff's agreement at the hearing on September 6, 2013. The claims that remain are plaintiff's claims against the State Defendants for violation of his substantive and procedural due process rights under the Fourteenth Amendment and his rights under the Fourth Amendment.

This report and recommendation will be filed electronically and a copy mailed to plaintiff on this date. Any objections must be filed, with a courtesy copy sent to the Honorable Nicholas G. Garaufis by September 29, 2014. Failure to file objections within the specified time waives the right to appeal. <u>See</u> 28

U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

**SO ORDERED.**

Dated: Brooklyn, New York
      September 10, 2014

                                  _____/s/_____
                                  MARILYN D. GO
                                  UNITED STATES MAGISTRATE JUDGE