UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
HILARY BEST,

                     Plaintiff,

-against-

ANN MARIE BARBAROTTA, YEVGENIY
KHALDAROV, DR. MA LOURDES GONZALEZ, and
DR. PHILIP NINAN,

                     Defendants.*
-------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**12-CV-6142 (NGG) (SMG)**

NICHOLAS G. GARAUFIS, United States District Judge.

This long-running litigation was, as far as the court was concerned, brought to a close on November 9, 2017, when the court so-ordered a stipulation of settlement and order of dismissal with prejudice (the "Stipulation") to which the remaining defendants in this action ("Defendants") and pro se Plaintiff Hilary Best had agreed. (See Stipulation of Settlement ("Stip.") (Dkt. 159).) On December 14, 2017, however, Plaintiff moved to strike Section 2 of the Stipulation, which sets forth a settlement sum of $105,000 and specifies that the sum is to be treated as taxable income (the "1099 language"). (See Mot. to Strike (Dkt. 164).) The undersigned referred Plaintiff's motion to Magistrate Judge Steven M. Gold, who issued a report and recommendation ("R&R") that the court deny Plaintiff's motion. (R&R (Dkt. 179).) Plaintiff objected to the R&R (see Pl. Obj. to R&R ("Pl. Obj.") (Dkt. 186)) and Defendants responded to Plaintiff's objection (see Defs. Resp. to Pl. Obj. ("Defs. Resp.") (Dkt. 187)). For the following reasons, the court ADOPTS IN FULL the R&R and accordingly DENIES Plaintiff's motion to strike.

---

* The clerk of court is respectfully DIRECTED to amend the caption of this case accordingly and terminate from the docket all defendants who were dismissed from this case prior to November 9, 2017.

1

## I. BACKGROUND

### A. Facts

This action stems from Plaintiff's allegation that, on December 4, 2012, he was involuntarily committed to the Creedmoor Psychiatric Center ("Creedmoor"). (See Am. Compl. (Dkt. 6) at 6-8.) After five years of litigation, the parties entered into settlement negotiations in August 2017. (Decl. of Steven G. Morris ("Morris Decl.") (Dkt. 168) ¶ 4.) On August 31, 2017, the parties orally agreed in principle on a settlement of $77,500. (Id. ¶ 7.) After Defendants sent Plaintiff an unsigned agreement "memorializing the terms of the settlement," Plaintiff responded with numerous alterations, including a demand for $100,000 more. (Id. ¶¶ 8-10.) Over the next two months, Plaintiff and Defendants continued to negotiate, with Plaintiff proposing numerous revisions to settlement offers made by Defendants. (See id. ¶¶ 11-12.) Among other changes, Plaintiff repeatedly attempted to remove the 1099 language from the settlement, an alteration that Defendants found unacceptable. (See id. ¶ 12.)

With negotiations "stalled," Defendants requested a settlement conference. (Id. ¶ 13; see Oct. 6, 2017, Defs. Letter (Dkt. 150).) On November 8, 2017, the parties held a settlement conference lasting over three hours, at the conclusion of which they executed a settlement agreement—the Stipulation. (See Nov. 8, 2017, Min. Entry (Dkt. 156).) The Stipulation included the 1099 language, which provides:

> Payment of the [settlement amount] shall be made as follows: To Plaintiff, by check made payable to "Hilary Best," the gross sum of One Hundred and Five Thousand Dollars and No Cents ($105,000.00), for which an I.R.S. Form 1099 shall be issued to Plaintiff, in full and complete satisfaction of any and all claims, allegations or causes of actions for compensatory damages . . . , lost wages, benefits, and economic damages . . . , and attorneys' fees, costs, disbursements, and expenses incurred by Plaintiff in this Action, as well as in connection with any other proceeding, administrative, judicial, or otherwise, and any other claim or action

> alleging any of the acts, transactions, occurrences, or omissions asserted in this Action or elsewhere arising out of any conduct, acts, or omissions prior to, and as of the date of this Settlement Stipulation, including but not limited to those asserted in the Action.

(Stip. ¶ 2.) Plaintiff, counsel for Defendants, and Judge Gold all signed the Stipulation. (See id. at p.12.) The court so-ordered the Stipulation the following day. (See So-Ordered Stip. (Dkt. 159).)

### B. Procedural History

On December 14, 2017, Plaintiff moved the court to strike the 1099 language. (See Mot. to Strike.) The undersigned referred the motion to Judge Gold. (See Dec. 20, 2017, Order Referring Mot. (Dkt. 166).) On February 22, 2018, Judge Gold issued an R&R recommending that the court deny Plaintiff's motion in its entirety. (See R&R.)

On May 15, 2018, Defendants informed the court that "on or about May 8, 2018, Plaintiff deposited the settlement checks that were sent to him by the Office of the New York State Comptroller in full satisfaction of the settlement payment due under the terms of the [Stipulation]." (Defs. May 15, 2018, Letter (Dkt. 193).)

The court adds that Defendants Jennifer Schecter and Kevin Rooney were dismissed from this action on January 10, 2013. (See Jan. 10, 2013, Mem. & Order (Dkt. 9).) Defendants Myles Schneider, Ankur Saraiya, and Michael Hogan were dismissed from this action on September 21, 2015. (See Sept. 21, 2015, Mem. & Order (Dkt. 102).) Although Kristin M. Woodlock is listed on the public docket as a defendant, she was only named as a defendant in Plaintiff's second amended complaint, which the court denied him leave to file. (See Apr. 20, 2016, Order (Dkt. 113); Proposed Second Am. Compl. (Dkt. 17).) The only remaining defendants in this action are Ann Marie Barbarotta, Yevgeniy Khaldarov, Dr. Ma Lourdes Gonzalez, and Dr. Philip Ninan, all of whom are represented by the Office of the New York Attorney General ("OAG").

3

## II. LEGAL STANDARD

In reviewing an R&R from a magistrate judge regarding a dispositive motion, the district court "may adopt those portions of the Report to which no objections have been made and which are not facially erroneous." Romero v. Bestcare Inc., No. 15-CV-7397 (JS), 2017 WL 1180518, at *2 (E.D.N.Y. Mar. 29, 2017) (internal citation omitted); see Impala v. U.S. Dep't of Justice, 670 F. App'x 32, 32 (2d Cir. 2016) (summary order) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision . . . ." (internal citation omitted)); Gesualdi v. Mack Excavation & Trailer Serv., Inc., No. 09-CV-2502 (KAM), 2010 WL 985294, at *1 (E.D.N.Y. Mar. 15, 2010) ("Where no objection to the [R&R] has been filed, the district court need only satisfy itself that there is no clear error on the face of the record." (internal quotation marks and citation omitted)). "A decision is 'clearly erroneous' when the Court is, 'upon review of the entire record, left with the definite and firm conviction that a mistake has been committed.'" DiPilato v. 7-Eleven, Inc., 662 F. Supp. 2d 333, 339-40 (S.D.N.Y. 2009) (alteration adopted) (quoting United States v. Snow, 462 F.3d 55, 72 (2d Cir. 2006)).

The district court must review de novo "those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1); see Fed. R. Civ. P. 72(b)(3). To obtain this de novo review, an objecting party "must point out the specific portions of the [R&R]" to which objection is made. Sleepy's LLC v. Select Comfort Wholesale Corp., 222 F. Supp. 3d 169, 174 (E.D.N.Y. 2016); see also Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the [R&R]."). If a party "makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the [R&R] only for clear error." Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008) (citations omitted); see also Mario v. P & C Food Mkts.,

Inc., 313 F.3d 758, 766 (2d Cir. 2002) (holding that plaintiff's objection to an R&R was "not specific enough" to "constitute an adequate objection under . . . Fed. R. Civ. P. 72(b)").

"When an individual is proceeding pro se, his objections generally should be accorded leniency and should be construed to raise the strongest arguments that they suggest." Bonano v. Staniszewski, No. 12-CV-5879 (DLI), 2017 WL 4220402, at *2 (E.D.N.Y. Sept. 22, 2017) (alteration adopted) (citation and quotation marks omitted). "Nevertheless, even a pro se party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument." Id. (citation and quotation marks omitted).

## III. DISCUSSION

First, the R&R construed Plaintiff's motion to strike as a motion for relief from a final order or judgment brought pursuant to Federal Rule of Civil Procedure 60(b). (R&R at 4.) The R&R noted that it could have treated Plaintiff's motion as a motion to alter or amend a judgment under Rule 59(e) or a motion for reconsideration, except that in this case either such motion would have been untimely. (Id. at 4 n.4.) Liberally interpreting Plaintiff's moving papers, the R&R found his motion to be meritless under either Rule 60(b)(1), which provides for relief in the case of "mistake, inadvertence, surprise, or excusable neglect," or Rule 60(b)(3), which provides for relief in the case of "fraud . . . , misrepresentation, or misconduct by an opposing party." (Id. at 4-11.) After de novo review of the R&R's conclusions, the court ADOPTS the R&R in full and DENIES Plaintiff's motion to strike.

### A. Mootness

The court must first ask whether Plaintiff's motion is now moot by operation of his having deposited the settlement checks. (See Defs. May 15, 2018, Letter.) Defendants claim

5

that Plaintiff's motion to strike is now moot because his depositing of the settlement checks "constitutes an accord and satisfaction." (Id.) In response, Plaintiff does not dispute that he deposited the settlement checks, but states that this action did not moot his pending motion. (See Pl. May 30, 2018, Letter (Dkt. 194).) The court finds that Plaintiff's acceptance of the checks was not an accord and satisfaction, and therefore rejects Defendants' claim of mootness.

Under New York law, "acceptance of a check in full settlement of a disputed or unliquidated claim operates as an accord and satisfaction discharging the claim." Patel v. Orma, 593 N.Y.S.2d 851, 853 (App. Div. 1993). "[A]n accord and satisfaction will only be found where there is a 'clear manifestation of intent by the parties that the payment was made, and accepted, in full satisfaction of the claim.'" TIAA Global Invs., LLC v. One Astoria Square LLC, 7 N.Y.S.3d 1, 11 (App. Div. 2015) (quoting Rosenthal v. Quadriga Art, Inc., 963 N.Y.S.2d 192, 194 (App. Div. 2013)).

Plaintiff's acceptance of the settlement checks did not moot his pending motion because there is no evidence that the payment was made and accepted in order to settle his motion to strike. Instead, it is clear that the payment was made and accepted as part of the agreement to settle Plaintiff's underlying claims against Defendants. Defendants' reliance on Guadagni v. Chong, 784 N.Y.S.2d 920, 2003 WL 23304856 (App. Term. Dec. 22, 2003), is misplaced. In that case, the court prohibited two former tenants from bringing an action to recover the balance of their security deposit from their landlord because, after they moved out, the tenants cashed a check that had been designated as a "final settlement." Id. at *1. That situation presented a prototypical accord and satisfaction: A payor offers a payee an amount of money understood by both sides to constitute waiver of any existing claims the payee might have relating to a certain transaction; and the payee accepts the money, thus discharging the payee's potential claims. See

6

id. It would be nonsensical to bar the payee from bringing suit on the basis of alleged improprieties in the settlement process simply because he had accepted the settlement payment. Because Defendants misunderstand the doctrine of accord and satisfaction, the court rejects their claim of mootness.

### B.     Motion to Strike

The court now turns to Plaintiff's motion. As set forth above, Judge Gold recommended construing the motion as a Rule 60(b) motion for relief from a final order or judgment and denying it on all grounds. (See R&R.)

#### 1.     Construction of Plaintiff's Motion

The R&R, obeying the requirement that a pro se party's pleadings are to be "liberally construed," recommended considering Plaintiff's motion as one brought under Federal Rule of Civil Procedure 60(b). (R&R at 3-4.) The court noted that Plaintiff's motion might more naturally be treated as a Rule 59(e) motion or a general "motion for reconsideration," but that his motion would have been untimely in either such case. (Id. at 4 n.4.) Because the court must read a pro se party's pleadings "to raise the strongest arguments they suggest," Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001), the R&R was correct to treat Plaintiff's motion as being brought under Rule 60(b), for which the filing period had not expired as of December 14, 2017.

#### 2.     Jurisdiction

Although neither side addressed the issue of jurisdiction in its briefing, the R&R sua sponte raised the question of whether the court has jurisdiction to adjudicate Plaintiff's motion. (See R&R at 3.) The R&R found it "unlikely" that the court retains jurisdiction over this case but that, because Plaintiff's motion should be considered under Rule 60(b), federal jurisdiction is proper. (Id. at 3-4.) The court agrees. Even though the Stipulation did not provide for federal

jurisdiction to enforce the settlement agreement, and even though no party alleges an independent basis for federal jurisdiction over the settlement, Plaintiff's Rule 60(b) motion is proper for consideration by this court. See Melchor v. Eisen & Son Inc., No. 15-CV-113 (DF), 2016 WL 3443649, at *6 (S.D.N.Y. June 10, 2016) (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 378 (1994)); see also Krauth v. Exec. Telecard, Ltd., No. 95-CV-106 (RWS), 1995 WL 272556, at *3 (S.D.N.Y. May 9, 1995) ("[N]othing in Kokkonen bars Plaintiff's 60(b) motion to vacate the . . . order of dismissal.").

3.   Merits

Rule 60(b) provides, in relevant part, that the court may relieve a party from a final judgment for "(1) mistake, inadvertence, surprise, or excusable neglect" or "(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party," or if "(4) the judgment is void." Rule 60(b) is an "extraordinary" judicial mechanism that can only be invoked upon a showing of "exceptional circumstances." Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986). The fact that Plaintiff is pro se is not, by itself, an "exceptional circumstance" meriting relief under Rule 60(b). Williams v. N.Y.C. Dep't of Corrs., 219 F.R.D. 78, 85 (S.D.N.Y. 2003). The burden of proof is on the party seeking relief from judgment. United States v. Int'l Bhd. of Teamsters, 247 F.3d 370, 391 (2d Cir. 2001). "The decision whether to grant a party's Rule 60(b) motion is committed to the sound discretion of the district court . . . ." Stevens v. Miller, 676 F.3d 62, 67 (2d Cir. 2012) (internal quotation marks and citation omitted).

The R&R found that Plaintiff had not met his burden of proof under either Rule 60(b)(1) or (3). (R&R at 6-11.) Plaintiff, unsurprisingly, objects to both of these conclusions. (Pl. Obj. ¶¶ 1, 6-8.) Plaintiff also argues that Judge Gold should have considered Plaintiff's motion under

8

Rule 60(b)(4) on the grounds that he did not make a "knowing and intelligent endorsement of the [Stipulation]." (Id. ¶ 1; see id. ¶¶ 2-5.) After performing de novo review on these objections, the court finds that Plaintiff's motion is meritless.

    *a. 60(b)(1): Mistake, Inadvertence, Surprise, or Excusable Neglect*

"Rule 60(b)(1) is available for a district court to correct legal errors by the court." United Airlines, Inc. v. Brien, 588 F.3d 158, 175 (2d Cir. 2009) (internal quotation marks and citation omitted). As the R&R correctly set forth, Rule 60(b)(1) relief is proper "in only two instances: (1) when the party has made an excusable litigation mistake or (2) when the judge has made a substantive mistake of law or fact in the final judgment or order." Bey v. Iaquinto, No. 12-CV-5875 (JCF), 2016 WL 462412, at *4 (S.D.N.Y. Feb. 4, 2016) (internal quotation marks and citation omitted). (See R&R at 6.) "[R]elief is generally not available to a party who comes to regret his decision to voluntarily dismiss his case." Bey, 2016 WL 462412, at *3; see Nemaizer, 793 F.2d at 62.

Plaintiff argues that, when he signed the Stipulation, he thought the document did not contain the 1099 language. (Pl. Obj. ¶¶ 7-8.) According to him, the inclusion of the 1099 language was a "thorny point between the parties" before the November 8, 2017, settlement conference, and that it was "clearly Plaintiff's position not to approve the [Stipulation]" with this language included. (Id. ¶ 8.) Although Plaintiff signed the Stipulation with the 1099 language included, he claims that he "mistakenly thought that it had been removed." (Id.) Plaintiff also faults Judge Gold for permitting Plaintiff to sign the Stipulation with this supposedly false understanding, rather than "direct[ing] the parties [to] take a week or two to peruse the final draft and then sign it if there were no further disputes concerning [its] terms." (Id. ¶ 16.) Instead, Plaintiff claims he was unfairly rushed to sign the Stipulation due to the fact that he had to be in

9

state court later that afternoon for an unrelated matter. (See id. ¶ 9.) All in all, Plaintiff claims that he did not know that the Stipulation contained the 1099 language and that he would not have signed it had he known. (See id. ¶¶ 5, 8.)

Plaintiff's argument does not hold up. As Defendants point out, Plaintiff did not sign the Stipulation in haste, nor was he forced into it by Defendants or the court: Before the November 8, 2017, conference, Plaintiff and Defendants engaged in "extensive negotiations" during which Plaintiff "zealously negotiate[d] the terms of the agreement." (Defs. Resp. at 12.) Many of Plaintiff's arguments resulted in substantive changes being made to the agreement. (Id. at 12-13.) Furthermore, during the hours-long settlement conference, Plaintiff further objected to "several provisions of the agreement" but "did not raise any objection to, or question regarding," the 1099 language. (Id. at 13.) Finally, Judge Gold "gave Plaintiff ample time to review the revised version of the agreement before signing it," including two lengthy recesses. (Id.) Defendants also note that the 1099 language had been included in the "original version of the agreement sent to Plaintiff on September 8, and thus he was afforded two months to review that particular provision before the conference." (Id. at 13-14.) That Plaintiff had another court appearance the afternoon of the settlement conference—something of which he did not inform Defendants or Judge Gold until that same afternoon, rather than seeking to reschedule the conference—does not change the fact that he had ample time to review the final version of the agreement before signing it. (Id. at 15-17.) Taken together, there can be no disputing the fact that Plaintiff had ample time to read, evaluate, and object to the Stipulation before signing it.

The court also agrees with Defendants and Judge Gold that, even if Plaintiff did intend to seek to have the 1099 language removed from the final agreement but neglected to do so, such a failure to act is not "excusable neglect" for the purposes of Rule 60(b)(1). (See Defs. Resp.

10

at 14; R&R at 9.) Plaintiff is "culpable" for his lack of diligence in pursuing the now-desired procedural outcome, especially where, as set forth above, the Stipulation was entered into voluntarily. 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2858 (3d ed. 2018); see Martell v. Astrue, No. 09-CV-1701 (NRB), 2010 WL 4159383, at *2 (S.D.N.Y. Oct. 20, 2010) (holding that a failure to object before issuance of a court order shows a lack of diligence). This conclusion also applies to Plaintiff's claim that he did not intend to "waive having this Court determine . . . the constitutionality of GPL §730.30(3)" (Pl. Obj. ¶ 5) given that, as Defendants point out, Plaintiff agreed in the Stipulation to waive "any and all claims regarding or arising out of the claims, causes of action, acts, transactions, occurrences, or omissions which are described, alleged, or contained in the Complaint or Amended Complaint in this action" (Defs. Resp. at 17-18 (quoting Stip. ¶ 11)) and that Judge Gold explained the consequence of this provision (id. at 18).

Finally, the court agrees that Plaintiff cannot convincingly argue that he did not "fully comprehend[] the consequence of [the Stipulation's] terms." (See Pl. Obj. ¶ 16.) Judge Gold explained the consequences of the Stipulation quite clearly to Plaintiff, following which he assented to its terms. (See Defs. Resp. at 14-15.) Nothing in the record supports the unfounded assertion that Judge Gold lied to Plaintiff in order to "influence" Plaintiff's acceptance of the Stipulation. (See Pl. Obj. ¶ 7.)

Whether Plaintiff now regrets the 1099 language or whether he actually overlooked its inclusion in the Stipulation is immaterial: The "extraordinary" facts necessary to support a finding of mistake, inadvertence, surprise, or excusable neglect do not exist in this case.

b.  *60(b)(3): Fraud, Misrepresentation, or Misconduct*

Under Rule 60(b)(3), "[t]he moving party must demonstrate by clear and convincing evidence that the adverse party engaged in fraud, misrepresentation, or other misconduct." Catskill Dev., L.L.C. v. Park Place Entm't Corp., 286 F. Supp. 2d 309, 312 (S.D.N.Y. 2003) (citing, inter alia, Fleming v. N.Y. Univ., 865 F.2d 478, 484 (2d Cir. 1989)). "In addition, the moving party must show that this conduct prevented the movant from fully and fairly presenting his case." Id. (alteration adopted) (internal quotation marks and citation omitted). As is the case with Rule 60(b)(1), "[a] Rule 60(b)(3) motion cannot serve as an attempt to relitigate the merits." Id. (citing Fleming, 865 F.2d at 484).

As Defendants note, Plaintiff's primary argument for relief under Rule 60(b)(3) is that Assistant Attorney General Steven G. Morris, Defendants' counsel, "misrepresented to [Plaintiff] that the [1099 language] to which he objects is required by law." (Defs. Resp. at 19.) Judge Gold rejected Plaintiff's motion on this point, stating that "Plaintiff has pointed to nothing that suggests that [Morris] did not believe in good faith that the 1099 language in the Stipulation is required by law[, n]or is there any evidence that Morris attempted to trick or deceive plaintiff in any way." (R&R at 9-10.) As to the former point, the R&R was correct to find that Defendants had "a good faith basis for their belief that the law does require them to report the payment of the settlement proceeds to plaintiff on a Form 1099." (Id. at 10.) Under the Internal Revenue Code, taxable "gross income does not include . . . the amount of any damages (other than punitive damages) received . . . on account of <u>personal physical injuries or physical sickness</u>." I.R.C. § 104(a)(2) (emphasis added). The statute is clear that "emotional distress shall not be treated as a physical injury or physical sickness." Id. § 104(a). Plaintiff does not put forth any argument to rebut the R&R's conclusion that Plaintiff's amended complaint sought taxable "damages for

mental and emotional suffering." (R&R at 10.) Furthermore, claims alleging loss of liberty—like Plaintiff's (see Am. Compl. at 11)—do not typically fall within the § 104(a)(2) exception. See Stadnyk v. C.I.R., 367 F. App'x 586, 593 (6th Cir. 2010). Plaintiff also does not rebut the R&R's latter point—that there is no evidence that Morris attempted to trick or deceive Plaintiff as to the necessity of the 1099 language. The court accordingly agrees with the R&R that Defendants "have, at a minimum, a colorable basis for their position that reporting their payment to plaintiff on a Form 1099 is required," and that therefore Plaintiff cannot allege that the inclusion of this term was induced by fraud or misrepresentation. (R&R at 10-11.) See Lyles v. Medtronic Sofamor Danek, USA, Inc., 871 F.3d 305, 317 (5th Cir. 2017) (indicating that actions taken in "good faith" cannot support allegations of fraud or misrepresentation under Rule 60(b)(3)).

Plaintiff makes a number of additional objections that seek to point out "fraud and misrepresentation" by both Morris and Judge Gold. First, he alleges that Morris "fraudulently represented that there was an outstanding lien against Plaintiff of $117,000.00," something that Plaintiff claims "was manufactured purely for the purpose of influencing Plaintiff to accept" the Stipulation. (Pl. Obj. ¶ 6.) As Defendants point out, the lien does indeed exist, though they agreed to wave it as part of the Stipulation. (Defs. Resp. at 22.) Insofar as Plaintiff claims that the lien was fraudulently used by Defendants in order to force him to agree to the Stipulation, he does not bring any evidence to bear in support of that claim or show that any mention of the lien prevented him from fully asserting his case in settlement negotiations.

Second, he claims that Morris "engaged in deception and misrepresentation intended to derail the instant motion and prejudice the Court against Plaintiff by making false allegations of misconduct against Plaintiff." (Pl. Obj. ¶ 13.) The facts of this claim are hard to parse, but

13

Plaintiff seems to be alleging that, although "Morris did not express any concerns regarding Plaintiff going to [OAG] at 120 Broadway, 24th Floor," during the settlement conference (id. ¶ 14), Plaintiff was subsequently barred from going upstairs to the OAG offices (see Defs. Resp. at 23), an action that he asserts was taken in retaliation for Plaintiff's motion to strike (see Pl. Obj. ¶ 14). As Defendants recount, the OAG Investigation Bureau determined that, following "a series of very angry phone calls and voicemails from Plaintiff, . . . Plaintiff would no longer be allowed upstairs in the office." (Defs. Resp. at 23.) This step did not prejudice Plaintiff in his ability to serve papers on Defendants. (Id. at 23 n.3.) Additionally, as Defendants note, "Plaintiff's assertion that the restriction was imposed 'in response to the instant motion' is belied by the timeline of events[,] as the restriction was implemented on November 9, over a month before Plaintiff filed his motion to strike on December 14." (Id. at 23 (citation omitted).)

Third, he claims that Morris "misrepresented that Plaintiff 'refused' or was 'unwilling' to pay Dr. Tarle for the time he spends in the deposition, when Plaintiff only insisted that Plaintiff could not afford to reimburse Defendants' expert witness for being deposed." (Pl. Obj. ¶ 12.) It is unclear how this assertion relates to Plaintiff's motion to strike the 1099 language.

Finally, Plaintiff alleges that Judge Gold's "misapprehension and/or misapplication of appropriate legal procedure in discussing Plaintiff's options in the settlement conference contributed to confusing Plaintiff's assessment of available options and unduly influenced Plaintiff's decision making." (Id. ¶ 12.) The court rejects Plaintiff's conclusory and baseless objection to Judge Gold's skillful and sensitive handling of this matter.

   c. *60(b)(4): Void Judgment*

Under Rule 60(b)(4), "[a] judgment is not void . . . simply because it is or may have been erroneous." United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 270 (2010) (quotation

marks and citation omitted). Rather, "a judgment may be declared void for want of jurisdiction only when the court plainly usurped jurisdiction," i.e., "when there is a total want of jurisdiction and no arguable basis on which [the court] could have rested a finding that it had jurisdiction." Cent. Vt. Pub. Serv. Corp. v. Herbert, 341 F.3d 186, 190 (2d Cir. 2003) (internal quotation marks and citation omitted). This extraordinary form of relief is reserved "only for the exceptional case in which the court that rendered judgment lacked even an 'arguable basis' for jurisdiction." Espinosa, 559 U.S. at 271 (quoting Nemaizer, 793 F.2d at 65); see Wright & Miller, supra, § 2862 ("[I]f the court finds that there was subject-matter or personal jurisdiction, or that no due-process violation has occurred, the motion will be denied." (footnotes omitted)).

Judge Gold did not consider whether Plaintiff's objection to the Stipulation fell within Rule 60(b)(4). Plaintiff, however, argues that the court lacked subject-matter jurisdiction over the Stipulation because he did not make a "knowing and intelligent endorsement" thereof. (Pl. Obj. ¶ 1(d).) Plaintiff is incorrect. As he acknowledges elsewhere in his objection, the question of whether he "knowingly and intelligently" signed the Stipulation is more relevant to whether Plaintiff can be excused from the Stipulation due to his own mistake (see id. ¶ 15)—a question that the court already answered in the negative. Plaintiff does not, nor could he, argue that the district court was not "empowered to decide" his case at the time of the stipulation. See United States ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd., 110 F.3d 861, 864 (2d Cir. 1996). His amended complaint was brought pursuant to 42 U.S.C. § 1983 and sought relief "for the violation of his constitutional rights in connection with his involuntary commitment at Creedmoor Psychiatric Center" from a variety of government defendants. (See Am. Compl.; Sept. 21, 2015, Mem. & Order (Dkt. 102) at 1.) Federal jurisdiction was plainly proper in this instance, and the court accordingly rejects Plaintiff's claim for relief under Rule 60(b)(4).

15

## IV. CONCLUSION

For the foregoing reasons, the court ADOPTS IN FULL the R&R (Dkt. 179) and DENIES Plaintiff's motion to strike (Dkt. 165). The Clerk of Court is respectfully DIRECTED to send a copy of this Memorandum & Order by certified mail, return receipt requested, to pro se Plaintiff at his address of record.

SO ORDERED.

Dated: Brooklyn, New York
August 20, 2018

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge